1   DANIEL T. LEBEL, SBN 246169
2   **CONSUMER LAW PRACTICE**
    **OF DANIEL T. LEBEL**
3   PO Box 720286
    San Francisco, CA 94172
4   *danlebel@consumerlawpractice.com*
    Tel: (415) 513-1414
5   Fax: (877) 563-7848

6
7   ALICIA HINTON, SBN 292849
    **LAW OFFICE OF A.L. HINTON**
8   1616 W. Shaw Ave., Suite B7
    Fresno, CA 93711
9   *alicia@alhintonlaw.com*
    Tel: (559) 691-6900
10  Fax: (559) 421-0373

11  *Attorneys for Plaintiffs, MARIA ANDRADE and SHAUN CAULKINS*

12                    **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15  MARIA ANDRADE, on behalf of herself and )   Case No. 18-cv-6743
    those similarly situated, and SHAUN )
16  CAULKINS, on behalf of himself and those )   **COMPLAINT**
    similarly situated; )
17                    )     **1. VIOLATION OF CONSUMERS LEGAL**
                      )        **REMEDIES ACT (CAL.CIV.CODE**
18          Plaintiffs, )        **§ 1750, *ET SEQ.*);**
                      )
19      v.            )     **2. VIOLATION OF UNFAIR & DECEPTIVE**
    AMERICAN FIRST FINANCE, INC., a )        **BUSINESS PRACTICES (CAL. BUS. &**
20  corporation; AHMAD FAYEZ AL )        **PROF. CODE § 17200 *ET SEQ.*);**
    RAWASHDEH, an individual and dba )
21  ELEGANT FURNITURE; TERESA )     **3. VIOLATION OF 18 U.S.C. § 1961 (CIVIL**
    LOREDO, an individual and dba BELLA'S )        **RICO)**
22  FURNITURE; )
                      )     **4. VIOLATION OF 18 U.S.C. § 1962(D)**
23                    )        **(CIVIL RICO)**
            Defendants. )
24                    )     **5. VIOLATION OF UNRUH (CAL.CIV.CODE**
                      )        **§ 1801, *ET SEQ.*)**
25                    )
                      )     **6. MONEY HAD AND RECEIVED**
26                    )
                      )    **CLASS ACTION**
27                    )
                      )    **DEMAND FOR JURY TRIAL**
28

1.      Plaintiffs MARIA ANDRADE and SHAUN CAULKINS, on behalf of themselves and all others similarly situated, and demanding a trial by jury, complain and plead on knowledge as to themselves and their own acts and upon information and belief as to all other matters, as follows:

## A.  INTRODUCTORY STATEMENT

2.      Plaintiffs Maria Andrade, also known as Maria Rivera, and Shaun Caulkins ("Plaintiffs"), individually and on behalf of those similarly situated, bring this lawsuit because Defendant American First Finance, Inc. ("AFF") has entered into a scheme with "mom and pop" furniture stores whereby consumers are duped into entering retail installment sales agreements with AFF where the essential terms are undisclosed.

3.      Plaintiffs and those similarly situated purchased furniture from AFF affiliated businesses with the understanding that they would be making installment payments to the retail merchants. Without Plaintiffs' knowledge or consent, at the time of sale those businessess submitted Plaintiffs' personal information to AFF thus obligating each Plaintff under a retail installment agreement with AFF without proper disclosure of financing terms.

4.      Plaintiffs and those similarly situated suffered damage in that their personal information was shared with AFF without permission and they paid for financing they did not request or agree to, and at undisclosed terms including an exhorbitant interest rate. As a pattern and practice, AFF and it's affiliate network failed and continue to fail to adequately inform consumers concerning the nature of the transaction, including that they are entering into financing agreements at interest rates often exceeding 120%.

5.      Plaintiffs seek damages in the amount that they and those similarly situated overpaid for the financed products.

6.      Plaintiffs also seek declaratory and injunctive relief related to Defendants' failure to inform them of the actual interest rate of their purchase and their right to a refund.

7.      Plaintiffs seek injunctive relief necessary to repair the credit damageresulting from Plaintiffs' refusal to pay the undisclosed and exhorbitant interest rates.

/ / /

8.     Plaintiffs seek to recover economic damages for themselves and for the members of the class, in the form of refunds of all interest paid.

**B. JURISDICTION AND VENUE**

9.     This Court has jurisdiction pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435 ("CAFA"). At least one member of the proposed class is a citizen of a state other than where a defendant is incorporated and headquartered. The proposed class consists of more than 100 members.  Further the amount in controversy exceeds $5 million taking into account all damages and equitable relief on behalf of the proposed class, and excluding interest and costs.

10.     Jurisdiction is also proper under California Civil Code § 17200 et seq.

11.     California maintains a strong public policy to protect consumers from unfair and deceptive acts and practices and promote economic justice and security. California's consumer protection statutes  help consumers both to avoid predatory transactions and unfair practices and to obtain legal relief if they are victimized or treated unfairly in the marketplace. California's strong consumer protection statutes targeting unfair and deceptive debt collection practices  are built from the provisions of the federal Fair Debt Collection Practices Act. Further, California supports an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process.

12.     The Consumer Legal Remedies Act ("CLRA"), Civ.Code § 1750, et seq. is one of the strongest consumer protection statutes in California.  "The CRLA is a legislative embodiment of a desire to protect California consumers and furthers a strong public policy of this state. 'The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices...' (citation)" America OnLine, Inc. v. Superior Court (Mendoza) (2001) 90 Cal.App.4th 1, 9-10.  The CLRA's anti-waiver provision states: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Civ.Code § 1751.

13.     California's public policy is also aligned with the congressional purpose underlying the Truth In Lending Act ("TILA"), 15 USC 1601 et seq., which is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various

credit terms available to him and avoid the uninformed use of credit and to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices.

14.     This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with California and/or Defendants otherwise purposely avail themselves of the markets in California by selling consumer goods and providing financing for those goods in California, maintaining offices in California, employing workers in California, and advertising in California. Defendants' purposeful availment of the markets in California renders the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the Northern District of California, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Plaintiff ANDRADE is a resident of this District, and a substantial part of the property at issue is located in this District.

16.     <u>Intradistrict Assignment</u>:  Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Francisco and Oakland Division of the Northern District of California (the "Division") is proper, because a substantial part of the property that is the subject of the action is situated in Contra Costa county.  Defendant AFF provides financing for those goods in this Division, and advertises in this Division. Plaintiff ANDRADE is a resident of this Division, and a substantial part of the property at issue is located in this Division.

## C. THE PARTIES

### I.   PLAINTIFF CLASS

17.     The acts complained of herein occurred, at least in part, within the last four (4) years preceeding the filing of the Complaint.  During the relevant statutory period, Plaintiffs MARIA ANDRADE and SHAUN CAULKINS were induced to purchase consumer goods from AFF retail associates under a scheme that assured they had no access to the retail installment sales contracts for which AFF retail associates obligated them, and had no knowledge of the essential terms—including the interest rates—of those contracts.

18.     At all times during the class period, CLASS MEMBERS were customers of AFF retail associates who unknowingly became customers of AFF.

19.     The Plaintiff Class was charged exhorbitant interest on the loans funding these purchases of consumer goods, and when they attempted to contact the retail sellers, were informed that their loans had been "assigned" to AFF.  The loan documents later provided by AFF to Plaintiffs demonstrate that the purchase contracts were never "assigned" but were computer generated on an AFF form obligating consumers to contact AFF alone regarding the terms of the loans.  When Plaintiffs attempted to rescind the fraudulent contracts, AFF reported their failure to make additional payments to credit bureaus and sent their accounts to consumer collection agencies.

## II. REPRESENTATIVE PLAINTIFFS

20.     At the time of her sales transaction, Plaintiff Maria Andrade was temporarily living in  Fresno County, California. Her permanant residence is in Contra Costa County, where she currently lives. On December 9, 2015, Andrade purchased several pieces of furniture from Elegant Furniture in Fresno California, totaling $1,201.62.

21.     At the time of purchase Ms. Andrade was neither informed that the sale was financed with AFF nor the financing terms.  Ms. Andrade suffered financial damages as a result of AFF's failures to disclose the terms of the obligation. Had she known of the interest rates and other terms of the financing, Ms. Andrade would have refused to complete the transaction.  Ms. Andrade brings this litigation on her own behalf as well as other similarly situated individuals.

22.     At the time of the sales transaction, Plaintiff Shaun Caulkins was, and is, a resident of Stanislaus County, California. On November 21, 2015, Caulkins purchased several pieces of furniture from Bella's Furniture totaling $2,998.00.

23.     At the time of purchase, Mr. Caulkins was neither informed that the sale was financed with AFF nor the financing terms.  Mr. Caulkins suffered financial damages as a result of AFF's failure to disclose the terms of the obligation.  Had he known of the interest rates and other terms of the financing, Mr. Caulkins would have refused to complete the transaction.  Mr. Caulkins brings this litigation on his own behalf as well as other similarly situated individuals.

24.     During the Class Period (defined below) Ms. Andrade and Mr. Caulkins paid 120% interest on purchases made at AFF affiliated businesses.

### III.  Defendants

25.     AMERICAN FIRST FINANCE INC. ("AFF") is organized and incorporated under the laws of the State of Kansas with its principal place of business at 3515 N. Ridge Rd, Ste 200, Wichita, KS 67205.

26.     AFF offers financing products to retail merchants of consumer goods, promising almost instant credit approvals with little to no credit history.  AFF provides consumer installment contracts up to $5,000.00 for purchases of up to 120% of the consumer's income.

27.     AFF provides merchants with an electronic portal to enter consumer information, generating a retail installment contract that the merchent then "assigns" to AFF.  However, this "assignment" is a sham, as evidenced in the pre-printed terms of the AFF contract requiring consumers to contact AFF for the resolution of payment, interest, and other problems.

28.     Plaintiffs are informed and believe, and on that basis allege, that at all times stated herein AFF was the original obligee, or in the alternative, was "holder" of Plaintiffs' obligations as acknowledged by Defendant AFF in the language found on page four of the "Security Agreement" that Defendant AFF seeks to enforce.[1]  (See attached Exhibits "B" and "C.")

29.     Defendant, ELEGANT FURNITURE, is, and at all relevant times herein was, a business entity form unknown, doing business in the State of California, including the County of Fresno as a retail seller of furniture to consumers, and as the fictitious business name of its true owner, Defendant AHMAD FAYEZ AL RAWASHDEH.

30.     Plaintiffs are informed and believe, and on that basis allege, that at all times stated herein Defendant AHMAD FAYEZ AL RAWASHDEH was the principal, owner and operator of Defendant ELEGANT FURNITURE, and that each is the principal and agent of the other, and the

---

[1] "NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

1  acts of each as herein alleged are legally the acts of the other. Rawashdeh and Elegant Furniture

2  are jointly referred to herein as "Elegant Furniture."

3        31.     Defendant, BELLA'S FURNITURE, is, and at all relevant times herein was, a

4  business entity form unknown, doing business in the State of California, including the County of

5  Stanislaus as a retail seller of furniture to consumers, and as the fictitious business name of its true

6  owner, Defendant TERESA LOREDO.

7        32.     Plaintiffs are informed and believe, and on that basis allege, that at all times stated

8  herein Defendant TERESA LOREDO was the principal, owner and operator of Defendant

9  BELLA'S FURNITURE, and that each is the principal and agent of the other, and the acts of each

10  as herein alleged are legally the acts of the other. Loredo and Bella's Furniture are jointly referred

11  to herein as "Bella's Furniture."

12        33.     Plaintiffs are informed and believe, and on that basis allege, that at all times

13  mentioned herein each Defendant, whether actually or fictitiously named herein, was the principal,

14  agent (actual or ostensible), or employee of each other Defendant, and in acting as such principal

15  or within the course and scope of such employment or agency, took some part in the acts and

16  omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiffs for the

17  relief prayed for herein.

18        34.     The true names and capacities of Defendants sued as Does 1 through 20 are

19  unknown to Plaintiffs at this time.  Plaintiffs therefore sue said Defendants by such fictitious

20  names. Plaintiffs will amend this Complaint to allege the true names and capacities of Does 1

21  through 20 when ascertained.  Plaintiffs are informed and believe, and based thereon alleges, that

22  each Defendant is jointly and severally responsible in some manner for the damages alleged

23  herein.

24                **D.  FACTUAL ALLEGATIONS**

25                **I. Facts as to Plaintiff Shaun Caulkins**

26        35.     On or about November 21, 2015, Shaun Caulkins purchased several pieces of

27  furniture from Bella's Furniture in Modesto, California totaling $2,998.00.

28        36.     Mr. Caulkins completed a single page credit application at Bella's Furniture.

37.     The salesman, "Juan", told Caulkins that the payments for the furniture would be about $160 every two weeks, and that if he paid for the furniture in full within 90 days of purchase there would be no interest, but otherwise the interest would be about 27%.

38.     Bella's Furniture gave Mr. Caulkins a yellow carbon copy of a purchase order describing the goods and the total amount due as $2,998.00.  This document does not disclose the terms of financing.  This is the only sales document signed by Mr. Caulkins. A true and correct copy of the purchase order between Caulkins and Bella's Furniture is attached hereto as Exhibit "A."

39.     The next day, Caulkins returned to Bella's Furniture and provided a voided check with the understanding that Bella's Furniture would set up automatic payment withdrawals from that account.

40.     Without Mr. Caulkin's knowledge, Bella's Furniture electronically prepared an eight page "Security Agreement" which specified an annual percentage rate of 120%.  Mr. Caulkins was not shown the "Security Agreement", did not sign it, and was not given a copy at the time of sale.

41.     On November 21, 2015, Bella's Furniture "assigned" this installment sale to AFF. However, this "assignment" was a sham as evidenced in the pre-printed terms of the AFF contract requiring consumers to contact AFF regarding payments, terms, or other contractual concerns.

42.     Beginning December 29, 2015, AFF withdrew $162.00, twice a month, from Mr. Caulkins checking account.

43.     In about February 2016, Caulkins inquired with Bella's Furniture as to the balance of the loan. Bella's Furniture told Caulkins he would have to contact AFF directly about his payments, and refused to provide him with a copy of the actual loan agreement.  At this time Bella's Furniture added a handwritten note to Plaintiff's copy of the purchase order indicating the telephone number of AFF and his account number.

44.     Caulkins then contacted AFF and was told that he still owed $2,800 on the loan. After several demands to AFF to provide him with a copy of the purported loan agreement,

1   Caulkins received a copy from AFF and was shocked to learn that the finance rate for the furniture

2   loan was 120% and he would end up paying more than twice what the furniture was sold for.

3       45.     Mr. Caulkins was not presented with the loan agreement or loan terms at any time

4   prior, and would not have purchased the furniture if he had known of the true terms of the loan.

5   Caulkins was never sent a statement from AFF or notified by AFF in any way that it carried the

6   loan or what the loan terms were. In about August 2016, Caulkins stopped the automatic payment

7   withdrawals from his bank account.  Thereafter AFF began a campaign to collect the loan balance

8   from Caulkins. A true and correct copy of the loan agreement between AFF (or in the alternative,

9   Bella's Furniture) is attached hereto as Exhibit "B."

10      46.     On about January 19, 2017, Caulkins sent a demand for correction letter to Bella's

11  Furniture and AFF, in compliance with Civ.Code §1782. Neither Bella's Furniture nor AFF

12  responded to this letter.

13                    **II.  Facts as to Plaintiff Maria Andrade**

14      47.     On about December 9, 2015, Andrade purchased several pieces of furniture from

15  Elegant Furniture in Fresno, California, totaling $1,201.62, and was not informed at the time of

16  purchase that the sale was going to be financed with AFF and was not informed of any financing

17  terms.  The salesman, "Tru", told Andrade that the payments for the furniture would be about $100

18  every month and that if she paid for the furniture in full within 90 days of purchase there would be

19  no interest. Andrade signed the purchase order. Andrade was not informed about AFF and

20  believed that her payments would be made to Elegant Furniture. At the conclusion of the sale

21  transaction, "Tru" stated he needed Andrade to  confirm her debit account number for payment

22  deductions. He gave her a computer mouse and asked her to click the mouse to verify her account

23  number. She was not shown the face of the computer to know what she was authorizing by the

24  mouse click, and believed she was only authorizing  an automatic payment.

25      48.     Elegant Furniture presented Ms. Andrade with a purchase order describing the

26  furniture, and the tax and delivery to be charged.  Ms. Andrade initialed a note on the purchase

27  order stating "90 days same as cash".  This is the only reference to financing on the purchase order.

28  This is the only sales document signed by Ms. Andrade, and the only sales document provided to

1  her by Elegant Furniture. A true and correct copy of the purchase order between Andrade and

2  Elegant Furniture is attached hereto as Exhibit "C."

3       49.     Without Ms. Andrade's knowledge, Elegant Furniture electronically prepared an

4  eight page "Security Agreement" which specified an annual percentage rate of 120%. Ms.

5  Andrade was not shown the "Security Agreement", did not sign it, and was not given a copy at the

6  time of sale.

7       50.     On December 9, 2015, Elegant Furniture "assigned" this installment sale to AFF.

8  However, this "assignment" was a sham, as evidenced in the preprinted terms of the AFF contract,

9  which direct the consumer to contact only AFF regarding payments, terms, or other contractual

10  concerns.

11       51.     On January 6, 2016, and once a month thereafter, AFF debited Ms. Andrade's

12  account $143.41. Ms. Andrade assumed the difference between the stated amount and the amount

13  debited was due to an interest charge.

14       52.     Ms. Andrade determined that her final payment would be debited on or around

15  September 1, 2016. Ms. Andrade went to Elegant Furniture to verify her last payment date, and

16  was told that she had no contract with them, but a contract with AFF, and would have to contact

17  AFF directly about her payments. Elegant Furniture provided Plaintiff with her AFF account

18  number and a phone number for AFF.

19       53.     Andrade then contacted AFF and was told that she still owed $800 on the loan.

20  After several demands to AFF to provide her with a copy of the purported loan agreement,

21  Andrade received a copy from AFF and was shocked to learn that the finance rate for the furniture

22  loan was 120% and she would end up paying more than twice what the furniture was sold for.

23       54.     Andrade was not presented with the loan agreement or loan terms at any time prior,

24  and would not have purchased the furniture if she had known of the true terms of the loan.

25  Andrade was never sent a statement from AFF or notified by AFF in any way that it carried the

26  loan or what the loan terms were. Andrade continued to make payments for fear of damaging her

27  credit if she stopped, but made several calls to AFF attempting to resolve her concerns. On about

28  February 2, 2017, AFF offered to wipe out the loan balance if Andrade made one more payment on

1   the loan. Believing that she was a victim of unscrupulous business practices, Andrade refused and

2   stopped the payment withdrawals from her bank account in March of 2016. Thereafter AFF began

3   a campaign to collect the loan balance from Andrade, including placing calls to her family

4   members.  On about March 21, 2017, Andrade sent a letter to AFF withdrawing authorization to

5   withdraw funds or to contact her by any means other than by letter.  A true and correct copy of the

6   loan agreement between Andrade and Elegant Furniture is attached hereto as Exhibit "D."

7          55.     On about January 20, 2017, Andrade sent a demand for correction letter to Elegant

8   Furniture and AFF, in compliance with Civ.Code §1782. Neither Elegant Furniture nor AFF

9   responded to this letter.

10                              **E.  CLASS ALLEGATIONS**

11         56. Plaintiffs seek to certify a statewide class comprising: California consumers who

12   purchased consumer goods on an AFF installment payment plan from AFF affiliated retail

13   businesses and who were not informed at the time of sale by either AFF or AFF affiliated

14   business of the financial terms of the retail installment sale, for a period beginning four years

15   prior to the date this complaint is filed until the date of class certification ("Class Period").

16         57. This action has been brought and may properly be maintained as a class action,

17   pursuant to the provisions of California Code of Civil Procedure section 382, because there is a

18   well-defined community of interest in the litigation and the proposed class is easily

19   ascertainable.

20          a) **Numerosity:**  The Plaintiff Class is so numerous that the individual joinder of

21   all members is impracticable under the circumstances of this case.  While the exact number of

22   class members is unknown to Plaintiffs at this time, AFF has sold and continues to sell to class

23   members hundreds of Financed Products daily in California and throughout the United States.

24   Thus the class is so numerous as to make joinder impracticable, if not impossible.

25          b) **Common Questions Predominate:**  AFF has acted (by selling Financed

26          Products) and refused to act, on grounds generally applicable to the class.  These common

27          issues of fact and law predominate over any arguable individualized issues.

28   / / /

Common issues include:

i) Whether AFF's representations regarding the terms of sale of financed products were false and misleading, and unlawfully, unfairly, fraudulently, or unconscionably deceived class members into believing that their purchase agreements were with the individual furniture store, when they were not;

ii) Whether AFF's scheme of marketing financial products indirectly to consumers without their knowledge  is unfair, fraudulent, and unconscionable;

iii) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the California Legal Remedies Act, Civ.Code §1780 *et seq.;*

iv) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the Unruh Act, Civ.Code §1801 *et seq.;*

v) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the Truth in Lending Act, 15 USC 1601 *et seq.;*

vi) Whether AFF's scheme of marketing financial products through its co conspirators to consumers witthout their knowledge violates the Racketeer Influenced Corrupt Organizations Act ("RICO "), 18 U.S.C. § 1961 *et seq.* vi)  Whether the class has been damaged and, if so, the appropriate measure of damages, including the nature of the equitable relief to which the class is entitled.

c) **Typicality**   Plaintiffs' claims are typical of the claims of the other members of the class because Plaintiffs' and all of the class members' damages arise from and were caused by purchasing consumer goods on a retail installment sales plan financed by AFF. As a result, the facts and the law regarding AFF's alleged wrongful conduct are identical for Plaintiffs and all of the class members.

d) **Adequacy:**  Plaintiffs will fairly and adequately protect the interests of the members of the class, and Plaintiffs have no interests that are contrary to or in conflict with those of the class they seek to represent. Plaintiffs have retained competent counsel

experienced in class action litigation to prosecute this action vigorously.

e) **Superiority:**   A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractible.  The disposition of Plaintiffs' claims in a class action will benefit both the parties and the Court, because Plaintiffs' claims are identical to those of the proposed class and claims and defenses by the representative party are identicalClass action treatment will permit a large number of similarly situated persons to prosecute relatively small common claims in a single form simultaneously without duplication of expending personal and Court resources in individual actions.

Furthermore, as this the damage suffered by each individual member of the class may be relatively small, the burden of individual litigation make it difficult or impossible for individual members of the class to redress the wrongs done to them.  Additionally important public interest will be served by addressing the matter as a class action, while individualized litigation would present the potential for inconsistent or contradictory judgments, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law.

58. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Proper and sufficient notice of this action may be provided to the class members using AFF's electronic database of customer information and any other customer contact information in AFF's possession or control.

59. Plaintiffs and the members of the class have suffered irreparable harm and damages as a result of AFF's wrongful conduct as alleged herein. Absent a representative action, Plaintiffs and the members of the class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750 et seq.)**

**Against all Defendants**

60.     Plaintiffs incorporate by reference the foregoing allegations.

61.     Plaintiffs and the Plaintiff Class are "consumers" as defined by Civil Code §1760(d).

62.     Elegant Furniture is a "person" providing "goods" and "services" to "consumers" as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

63.     Bella's Furniture is a "person" providing "goods" and "services" to "consumers" as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

64.     AFF is a "person" providing "goods" and "services" (services means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods)  to "consumers" as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

65.     Defendants have a duty to disclose the terms of sale but refused and failed to do so. Defendants misrepresented the terms of sale, and concealed and failed to disclose the true terms of sale.  As the originator of the sales contracts, AFF's practices allowed it to charge exhorbitant interest that remained undisclosed to the Plaintiff class unless and until class members directly contacted AFF of whom they had no knowledge at the time of sale.  As the Plaintiffs were ignorant of the role of AFF in their purchases, Plaintiffs remained ignorant of the terms of those purchases.

66.     By engaging in the misrepresentations, concealments, and false statements alleged above, Defendants have violated Civil Code § 1770(a)(2), 3), (5), (7), (9), (13), (14), (16) and (19).

67.     Plaintiffs are informed and believe that Defendants engaged in the acts and practices herein alleged as part of a pattern, plan, and scheme directed at Plaintiffs and similarly-situated members of the public, with intent to deceive and induce the purchase of consumer goods at undisclosed and unconscionable interest rates, and increase the cost of those goods to the benefit of Defendants, and to the monetary detriment of Plaintiffs and the public.

68.     Plaintiffs have complied with all obligations required of them under Civil Code

1  § 1750, *et seq*., including requesting that defendants cure or correct the violations 30 or more days

2  priro to the filing of this action, which defendants have failed or refused to do.

3       69.     Plaintiffs have complied with all obligations required of them under Civil Code

4  § 1750, *et seq*., including requesting that defendants cure or correct the violations, which

5  defendants have failed or refused to do.

6       70.     As a result of said violations, Plaintiffs and the class have suffered and continue to

7  suffer actual damage, incidental and consequential damages, and request restitution, and attorney's

8  fees and costs according to proof.

9       71.     Plaintiffs on behalf of those similarly situated, seek restitution and injunctive relief

10  pursuant to California Civil Code § 1780. The Consumers Legal Remedies Act, Civil Code § 1750

11  *et seq*., is designed to protect consumers against unfair and deceptive business practices. It applies

12  to AFF's conduct because it covers transactions that are intended to result or that actually resulted

13  in the sale or lease of goods and services to consumers.

14       72.     Defendants did the above acts willfully, fraudulently, oppressively, maliciously, and

15  with intent to injure and damage Plaintiffs and class members, thus allowing punitive damages,

16  according to proof.

17            **SECOND CAUSE OF ACTION FOR EQUITABLE RELIEF**

18                 **(Violation of the Unfair Competition Law,**

19            **California Business and Professions Code § 17200 et seq.)**

20                      **Against all Defendants**

21       73.     Plaintiffs incorporate by reference the foregoing allegations.

22       74.     Under the Unfair Competition Law ("UCL"), unfair competition includes any

23  "unlawful," "unfair," or "fraudulent" business act or practice.

24       75.     The Law authorizes equitable relief for violations, under Bus. & Prof. Code

25  § 17203.

26       76.     Beginning at an exact date unknown to Plaintiffs but at least since four years prior

27  to initiating this action, Defendants committed acts of unfair competition, as defined by, and in

28  violation of Bus. and Prof. Code § 17200 by failing to disclose finance terms at the time of retail

1  installment sales of consumer goods, concealing exhorbitant and unconscionable finance rates,

2  refusing and failing to provide consumers with a copy of the retail installment contract, failing to

3  notify consumers where to obtain loan and financing information, and misleading consumers as to

4  the existence of financing by AFF.

5        77.    Defendants' above-mentioned policies and practices are unlawful, unfair, and

6  fraudulent, and likely to mislead the general public and, consequently, constitute an unlawful,

7  deceptive, and fraudulent business act or practice within the meaning of Bus. and Prof. Code

8  § 17200.

9        78.    The above acts and practices violate Business & Professions Code § 17200, *et seq*.

10  in that they are unlawful, unfair, and fraudulent and constitute acts of untrue and misleading

11  advertising.

12        79.    As a direct result of the aforementioned acts, Defendants received and continue to

13  hold ill-gotten gains belonging to Plaintiffs and class members.  Plaintiffs seek to enjoin

14  Defendants from engaging in said practices which will continue to injure and harm the members of

15  the public who unwittingly purchase consumer goods under retail installment sales contracts with

16  AFF unless and until enjoined from doing so by this court.  Plaintiffs also seeks restitution of all

17  money and property unlawfully obtained by Defendants from Plaintiffs together with attorney's

18  fees and costs according to proof.

19  **THIRD CAUSE OF ACTION**

20  **(Violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"),**

21  **18 U.S.C. § 1961 *et seq*. on behalf ofthe Class and against all Defendants)**

22      80. Plaintiffs incorporate by reference the foregoing allegations.

23      81. 18 U.S. C.§ 1962(c) makes it unlawful "for any person employed by or associated

24  with any enterprise engaged in, or the activities of which affect, interstate or foreign

25  commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

26  affairs through a pattern or racketeering activity or collection of unlawful debt."

27      82. 18 U.S.C. § 1964(c) creates a private right of action for any person injured in his

28  business or property by reason of violation of 18 U.S.C. § 1962, and provides for threefold

damages sustained as well as recovery for the cost of the suit, including reasonable attorneys fees.

83. Defendants AFF, Bellas Furniture, Elegant Furniture, and the unnamed Doe Defendants are all "persons" as defined by 18 U.S.C. § 1961(3) because they are all business entities capable of holding legal interest in property.

84. Plaintiffs, and the members of the putative class, are "persons" as defined by 18 U.S.C. § 1961(3).

85. As described in the Complaint, Defendants AFF, Bellas Furniture, Elegant Furniture, and the unnamed Doe Defendants are all "associated in fact" such that they constitute an "Enterprise" as defined by 18 U.S.C. § 1961(4).

86. As described in the Complaint, Defendants AFF, Bella's Furniture, and Elegant Furniture, engaged in a "pattern of racketeering activity" by committing at least two acts of racketeering activity after the effective date of RICO and also within ten years of each individual act. Specifically, Defendants actions described in the Complaint violate the following provisions:

87. The federal wire fraud statute, 18 U.S.C. § 1343, which is identified by 18 U.S.C. § 1961(1) as a predicate act for purposes of racketeering. It provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C.A. § 1343 (West 2010)

88. The federal mail fraud statute, 18 U.S.C. § 1341, which is identified by 18 U .S.C. § 1961 (1) as a predicate act for purposes of racketeering. It provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything

represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attemr.ting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1341 (West 2010).

## I.  The Associated in Fact Enterprise

89. The "Associated in Fact Enterprise" consists of Defendant AFF, Defendant Bellas Furniture, Defendant Elegant Furniture and the yet-unnamed Doe Defendants. Every member of the Enterprise participated in the process of obtaining, transmitting, billing, and collecting fraudulent, unauthorized charges by AFF to the plaintiffs and members of the Classes. The Enterprise committed these acts in a coordinated fashion for the common purpose of defrauding consumers and sharing in the profits of this fraud.

90. Plaintiffs are informed and believe that each member of the Enterprise played a role and acted in mutual reliance for the common purpose of obtaining, transmitting, billing and collecting fraudulent, unauthorized charges on AFF's bills.

## II.  The Pattern of Racketeering

91. Beginning at least four years prior to the filing of this Complaint, AFF adopted and implemented a uniform, nationwide scheme to defraud its customers by billing and collecting a percentage of fraudulent and unauthorized charges from its customers. For the purposes of implementing this fraudulent scheme, AFF associated itself and entered into nearly identical contractual relationships with retailers such as Defendants Bellas Furniture and Elegant Furniture. AFF allows Retailers to entrap consumers into installment sales contracts without their knowledge or consent enabling AFF to fraudulently charge customers exhorbitant and unconscionable interest rates.

92. Pursuant to this scheme, Defendant AFF has designed and implemented one common, uniform nationwide scheme to defraud its customers. AFF's contracts with the

retailers, such as Bella's Furniture and Elegant Furtniture, and the billing and collection systems used for purposes of implementing the nationwide fraudulent scheme, is one common, uniform, nearly identical system of provisions and rules used in virtually an identical manner in each state nationwide in which AFF provides consumer financing services.

93. Within the past four years, AFF has billed and collected millions of dollars in unauthorized charges pursuant to the above-described fraudulent scheme to bill and collect unauthorized charges from its customers.

94. Within the past four years, AFF has knowingly, intentionally, and/or recklessly engaged in an ongoing, pattern of racketeering activity under 18 U.S.C. §1962(c) by committing the predicate acts of wire and mail fraud by knowingly and intentionally implementing a scheme to bill and collect millions of dollars of unauthorized charges from its customers.

95. AFF, having devised or intending to devise a scheme or artifice to defraud its customers, for the purpose of executing such scheme or artifice or attempting to do so, placed and/or knowingly cause to be placed in a post office or authorized depository for mail matter, documents and/or packages to be sent or delivered by the Postal Service or private or commercial interstate carrier, and/or received from these entities such documents and/or packages, including but not limited to (1) bills mailed to AFF customers that contained fraudulent, unauthorized charges, (2) the receipt of payments electronically withdrawn from customers payment accounts for fraudulent, unauthorized charges, (3) billing and collection agreements between AFF and/or third party retailers, and (4) correspondence regarding the foregoing.

96. AFF, having devised or intending to devise a scheme or artifice to defraud its customers, for the purpose of obtaining money from the customers by means of false or fraudulent pretenses, representations, or promises as to fraudulent and unauthorized credit charges, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme or artifice, including by the (1) transmission of undisclosed, unauthorized charges by

third-party providers to billing aggregators for the purposes of ultimately being billed and collected by AFF pursuant to the scheme; (2) transmission of undisclosed, unauthorized charges by affiliated sales locations such as Bellas Furniture and Elegant Furniture to AFF, for purposes of ultimately being electronically collected by AFF pursuant to the scheme; (3) by transmitting e-mail communications relating to the process of obtaining, transmitting, and collecting fraudulent, undisclosed, unauthorized charges from the payment accounts of members of the Class; (4) by communicating with members of the Class via telephone wire and representing to them that the fraudulent charges were consented to when in fact were not; and (5) by collecting funds from customers via electronic fund transfers or electronic communications with the consumer's bank or credit card institution and transmitting payment from those accounts to AFF.  As part of this pattern of racketeering, AFF has used the Enterprise to increase profits to the detriment of AFF customers residing in California and across the United States where AFF operates its unlawful scheme.

97.     The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Complaint arise out of, and are based on, Defendant's use of the Internet and agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting fraudulent charges by AFF to the members of the Class, in furtherance of the racketeering scheme as alleged in this Complaint.

98.     The pattern of racketeering activity described in this Complaint is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering activities.

99.     Plaintiffs and the putative class members are the only direct victims of AFF's wrongful and unlawful conduct. Plaintiffs and the class members directly paid AFF money for undisclosed and unauthorized charges, including money that was in the custody or control of a financial institution.

100.     Plaintiffs and the putative class were injured because they were charged for and paid for a service that they did not authorize, and because they were the primary and intended victims of the scheme to defraud. It was a foreseeable and natural consequence of AFF's scheme

1   that customers would pay for the unauthorized charges. There are no independent factors that

2   account for Plaintiffs' and the putative class members' economic injuries. There is no risk of

3   duplicative recoveries by Plaintiffs and the putative class.

4          101.    There are no other, more immediate victims better situated to sue for the RICO

5   violations at issue, given that Plaintiffs and the putative class members were billed for and paid the

6   unauthorized charges.

7          102.    Plaintiffs were the victim of the scheme to defraud customers by being charged for

8   and paying for undisclosed and unauthorized charges. Numerous other class members were

9   exposed to the same scheme to defraud.

10          103.    As a direct and proximate result of Defendants' scheme, Plaintiffs and the putative

11   class members have lost money comprised of the amounts paid for undisclosed and unauthorized

12   charges, in an amount to be calculated with greater accuracy based on information in the

13   Defendants' records.

14          104.    As a direct and proximate result of the racketeering activities described in the

15   Complaint, Plaintiffs and the putative class members are entitled to recover treble damages for the

16   injuries they have sustained, according to proof, restitution, as well as costs of the lawsuit and

17   reasonable attorneys' fees under 18 U.S.C. § 1964(c).

18          105.    As a direct and proximate result of the racketeering activities described in this

19   Complaint, Plaintiffs, on behalf of themselves and the putative class members, are entitled to an

20   Order, under 18 U.S.C. § 1964(a) enjoining and prohibiting Defendants from engaging in the

21   unlawful conduct that the Enterprise has engaged in.

22                              **FOURTH CAUSE OF ACTION**

23   **(Conspiracy to Violate the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.**

24            **§ 1961 et seq. on behalf of the Class and against all Defendants)**

25          93.     Plaintiffs incorporate by reference the foregoing allegations.

26          94.     Defendants and the unnamed Doe Defendants have conspired with each other to

27   carry out the Enterprise pleaded above and to violate § 1962(c), as alleged above, in violation of

28   18 U.S.C. § 1962(d). Each has aided, assisted, and abetted the others in carrying out and

1    attempting to carry out the Enterprise.

2        95.    As alleged above, each Defendant by words or action manifested an agreement to

3    commit two or more predicate acts in furtherance of the common purpose of the RICO Enterprise.

4        96.    As alleged above, each Defendant knew of the conspiracy's goals and agreed to

5    facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other

6    things, two predicate acts of mail and/or wire fraud.

7

8                         **FIFTH CAUSE OF ACTION**

9    **(Violation of the Unruh Act, Civil Code § 1801, *et seq*. on behalf of the Class)**

10                        **Against all Defendants**

11       97.     Plaintiffs incorporate by reference the foregoing allegations.

12       98.    Plaintiffs and the Plaintiff Class are "retail buyers" of "goods" under a "retail

13   installment contract" as those terms are defined by Civil Code §§ 1802.4, 1802.1, 1802.6.

14       99.    Elegant Furniture is a "person" and "retail seller" in the business of selling "goods"

15   or funishing services to "retail buyers" as defined in Civil Code §§ 1802.15, 1802.1, 1802.3,

16   1802.4.

17       100.    Bella's Furniture is a "person" and "retail seller" in the business of selling "goods"

18   or funishing services to "retail buyers" as defined in Civil Code §§ 1802.15, 1802.1, 1802.3,

19   1802.4.

20       101.    AFF is a "person" and "retail seller" in the business of selling goods or funishing

21   services to retail buyers as defined in Civil Code §§ 1802.15, 1802.3.

22       102.    AFF is a "holder" who acquired the retail installment contract or installment

23   account executed, incurred or entered into by a retail buyer, and/or the financing agency or other

24   assignee of the installment contract or account, as defined in Civil Code § 1802.13.

25       103.    Defendants have a duty to disclose the terms of sale in a single document that

26   contains the entire agreement of the parties with respect to the cost and terms of payment for the

27   goods and services and other evidences of indebtedness between the parties relating to the

28   transaction. Defendants only provided a bill of sale on the date of purchase and refused and/or

1    failed to provide the associated retail installment contract until many months later.  (Civ.Code

2    §1803.2.)

3         104.    Defendants have a duty to disclose the true terms of sale but refused and failed to

4    do so, including:

5         a.    failing and/or refusing to provide the terms of sale on the bill of sale and

6    misrepresenting the terms of sale on the retail installment contract (Civ.Code §1803.3.);

7         b.    failing and/or refusing to include a description of the goods or services sufficient to

8    identify them on the retail installment contract (Civ.Code §1803.3(a));

9         c.    failing and/or refusing to deliver to the buyer at the time of the buyer's signature a

10   legible copy of the contract (Civ.Code §1803.7);

11        d.    failing and/or refusing to disclose to the buyer before the first transaction is made

12   on a retail installment contract mandatory disclosures in a single written statement (Civ.Code

13   §1810.1); and,

14        e.    failing and/or refusing to deliver to the buyer for each billing cycle a statement

15   setting forth mandatory disclosures regarding the account balances, finance terms and charges, and

16   payments applied (Civ.Code §1810.3).

17        105.    As the originator of the sales contracts, AFF's practices allowed it to charge

18   exhorbitant interest that remained undisclosed to the Plaintiff class unless and until class members

19   directly contacted AFF of whom they had no knowledge at the time of sale.  As the Plaintiffs were

20   ignorant of the role of AFF in their purchases, Plaintiffs remained ignorant of the terms of those

21   purchases and their rights under the contract.

22        106.    Plaintiffs are informed and believe that Defendants engaged in the acts and

23   practices herein alleged as part of a pattern, plan, and scheme directed at Plaintiffs and similarly-

24   situated members of the public, with intent to deceive and induce the purchase of consumer goods

25   at undisclosed and unconscionable interest rates, and increase the cost of those goods to the benefit

26   of Defendants, and to the monetary detriment of Plaintiffs and the public.

27        107.    Plaintiffs requested that defendants cure or correct the violations 30 or more days

28   prior to the filing of this action, which defendants have failed or refused to do.

108.     Because Plaintiffs were not shown and did not receive a copy of the retail installment contract, they were not aware of nor did they consent to terms under the contract, including the pre-dispute resolution procedure and arbitration provision.

109.     As a result of said violations, Plaintiffs and the class have suffered and continue to suffer actual damage, incidental and consequential damages, and request restitution, recovery of finance charges and any delinquency, collection or other allowable fees imposed under the contract (Civ.Code §1812.7), plus attorney's fees and costs according to proof. (Civ.Code §1811.1.)

110.     Defendants did the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiffs and class members, thus allowing the buyer to recover an amount equal to three times the total of the finance charges and any delinquency, collection, extension, deferral or refinance charges imposed, contracted for or received, according to proof. (Civ. Code §1812.9.)

## SIXTH CAUSE OF ACTION

### (Money Had and Received)

### Against Defendant AFF

111.     Plaintiffs incorporate by reference the foregoing allegations.

112.     AFF received money belonging to Plaintiffs when it electronically transferred Plaintiffs' money from their bank accounts.  AFF benefited from the receipt of their money and retained it. AFF is obligated to make restitution to Plaintiffs for their purchases of financed products.

113.     AFF received money belonging to the other class members when it collected financing payments. AFF benefited from receipt of their money and retained it. AFF is obligated to make restitution to the class members for their purchases.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray that the Court:

1.     Certify this matter as a class action with the class defined as set forth above, appoint Plaintiffs as representatives of the Class, and appoint their attorneys as Class Counsel;

2.     Declare that AFF's practice of marketing financed products through its affiliates in

1   such a way as to create retail installment sales contracts that are never disclosed to consumers,

2   violates the Consumer Legal Remedies Act, Unfair Competition Law, and other causes of action

3   pleaded herein;

4          3.      Preliminarily and permanently enjoin AFF from engaging in the practices

5   delineated in the Complaint which continue to injure and harm the members of the public who

6   unwittingly purchase consumer goods under retail installment sales contracts with AFF and

7   similarly enjoin the other Defendants from engaging in the conduct described in this Complaint as

8   violations of federal and state consumer protection statutes;

9          4.      Award monetary damages, plus any available statutory or punitive damages, in an

10  amount to be determined at trial.

11         5.      Enter an order for restitution and disgorgement of all profits;

12         6.      Award Plaintiffs and those similarly situated, reasonable attorney's fees and costs

13  of suit; and

14         7.      Award Plaintiffs and those similarly situated such other and further relief as the

15  Court may deem appropriate, just, and proper.

16

17  Dated:  October 24, 2018

18                                              Respectfully submitted,

19  **CONSUMER LAW PRACTICE**              **LAW OFFICE OF A.L. HINTON**
20  **OF DANIEL T. LEBEL**

21   */s/ Daniel T. LeBel*                    */s/ Alicia Hinton*
     Daniel T. LeBel                          Alicia L. Hinton
22

23  PO Box 720286                            1616 W. Shaw Ave., Suite B7
    San Francisco, CA 94172                  Fresno, CA  93711
24  Telephone: (415) 513-1414                Telephone:  (559) 691-6900
    Fascimile: (877) 563-7848                Fascimile: (559) 421-0373
25

26  *Counsel for Individual Plaintiffs and the*
27  *Proposed Class*

28