DANIEL T. LEBEL, SBN 246169
**CONSUMER LAW PRACTICE**
**OF DANIEL T. LEBEL**
PO Box 720286
San Francisco, CA 94172
*danlebel@consumerlawpractice.com*
Tel: (415) 513-1414
Fax: (877) 563-7848

ALICIA HINTON, SBN 292849
**LAW OFFICE OF A.L. HINTON**
1616 W. Shaw Ave., Suite B7
Fresno, CA 93711
*alicia@alhintonlaw.com*
Tel: (559) 691-6900
Fax: (559) 421-0373

*Attorneys for Plaintiffs, MARIA ANDRADE and SHAUN CAULKINS*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ANDRADE, on behalf of herself and those similarly situated, and SHAUN CAULKINS, on behalf of himself and those similarly situated;<br><br>        Plaintiffs,<br><br>    v.<br><br>AMERICAN FIRST FINANCE, INC., a corporation; AHMAD FAYEZ AL RAWASHDEH, an individual and dba ELEGANT FURNITURE; TERESA LOREDO, an individual and dba BELLA'S FURNITURE; MURAD FAYEZ AL RAWASHDEH, an individual and dba ELEGANT FURNITURE;<br><br>        Defendants. | Case No. 18-cv-6743-SK<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. **DECLARATORY RELIEF (CAL. CIV. PROC. § 1610);**<br><br>2. **VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL.CIV.CODE § 1750, *ET SEQ.*);**<br><br>3. **VIOLATION OF UNFAIR & DECEPTIVE BUSINESS PRACTICES (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*);**<br><br>4. **VIOLATION OF 18 U.S.C. § 1961 (CIVIL RICO)**<br><br>5. **VIOLATION OF 18 U.S.C. § 1962(D) (CIVIL RICO)**<br><br>6. **VIOLATION OF UNRUH (CAL.CIV.CODE § 1801, *ET SEQ.*)**<br><br>7. **MONEY HAD AND RECEIVED**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

1.     At the time of filing this First Amended Complaint, this action was stayed as to Plaintiff SHAUN CAULKINS pending the outcome of arbitration between him and Defendants AMERICAN FIRST FINANCE, INC. and TERESA LOREDO dba BELLA'S FURNITURE and the Court affirms or overturns the arbitrator's ruling.

2.     Plaintiff MARIA ANDRADE, on behalf of herself and all others similarly situated, and demanding a trial by jury, complains and pleads on knowledge as to herself and her own acts and upon information and belief as to all other matters, as follows:

## A.     INTRODUCTORY STATEMENT

3.     Plaintiff Maria Andrade, also known as Maria Rivera, ("Plaintiff"), individually and on behalf of those similarly situated, brings this lawsuit because Defendant American First Finance, Inc. ("AFF") has entered into a scheme with "mom and pop" furniture stores whereby consumers are duped into receiving loans from AFF where the essential terms are undisclosed and interest rates exceed statutory limits.

4.     AFF is incorporated in Kansas, at at all times relevant to Plaintiff's claims was not licensed to transact business in California in any form or fashion. On February 6, 2018, three years after it provided a loan to Plaintiff for her purchase of goods, AFF complied with the requirements of California law to transact business in the State of California as a foreign corporation, and as of that date became qualified and authorized to transact intrastate business in California, subject however, to California's licensing requirements.

5.     Prior and subsequent to February 6, 2018, AFF provided loans to California residents for the purchase of consumer goods despite its failure to obtain a license to provide loans in California. At the time of filing this First Amended Complaint, AFF continues to operate as an unlicensed lender in California.

6.     Plaintiff and those similarly situated (the "Class Members") purchased furniture from AFF affiliated businesses with the understanding that they would be making installment payments to the retail merchants. Without the Class Members' knowledge or consent, at the time of sale those businesses submitted the Class Members' personal information to AFF thus

1    obligating each Class Member under a financing agreement with AFF without proper disclosure of

2    the financing terms.

3        7.    Plaintiff and those similarly situated suffered damage in that their personal

4    information was shared with AFF without permission and they paid for financing they did not

5    request or agree to, and at undisclosed terms including an exorbitant interest rate. As a pattern and

6    practice, AFF and it's affiliate network failed and continue to fail to adequately inform consumers

7    concerning the nature of the transaction, including that they are entering into financing agreements

8    at interest rates often exceeding 120%.

9        8.    Plaintiff and the Class members seek declaratory relief that AFF Security

10   Agreements are loans subject to California's Financial Code §22000 *et seq*., known as the

11   California Finance Lenders Law; that AFF did not have the licensing required by the California

12   Finance Lenders Law necessary to offer and fund loans in California; that AFF's Security

13   Agreements are void and had no right to collect or receive any principal, charges, or recompense

14   in connection with the transaction; and, that all payments received to date are to be refunded.

15       9.    Plaintiff and the Class members seek to preliminarily and permanently enjoin AFF

16   from engaging in the practices delineated in the Complaint which continue to injure and harm the

17   members of the public who unwittingly purchase consumer goods subject to AFF loans and

18   similarly enjoin the other Defendants from engaging in the conduct described in this Complaint as

19   violations of federal and state consumer protection statutes;

20       10.   Plaintiff and the Class members seek an award monetary damages, including

21   incidental and consequential damages, according to proof; available statutory or punitive damages,

22   in an amount to be determined at trial; and, restitution to the Class for all principal, interest,

23   charges, or recompense in connection with the transaction paid to AFF during the class period and

24   disgorgement of all profits.

25   **B. JURISDICTION AND VENUE**

26       11.   This Court has jurisdiction pursuant to the "Class Action Fairness Act," 28 U.S.C.

27   §§ 1332(d), 1435 ("CAFA"). At least one member of the proposed class is a citizen of a state other

28   than where a defendant is incorporated and headquartered. The proposed class consists of more

1    than 100 members.  Further the amount in controversy exceeds $5 million taking into account all

2    damages and equitable relief on behalf of the proposed class, and excluding interest and costs.

3           12.    Jurisdiction is also proper under California Civil Code § 17200 et seq.

4           13.    California maintains a strong public policy to protect consumers from unfair and

5    deceptive acts and practices and promote economic justice and security. California's consumer

6    protection statutes  help consumers both to avoid predatory transactions and unfair practices and to

7    obtain legal relief if they are victimized or treated unfairly in the marketplace. Further, California

8    supports an overall legislative policy designed to enable consumers and others who may be in a

9    disadvantageous contractual bargaining position to protect their rights through the judicial process.

10          14.    The Consumer Legal Remedies Act ("CLRA"), Civ.Code § 1750, *et seq.* is one of

11   the strongest consumer protection statutes in California.  "The CRLA is a legislative embodiment

12   of a desire to protect California consumers and furthers a strong public policy of this state. 'The

13   CLRA was enacted in an attempt to alleviate social and economic problems stemming from

14   deceptive business practices...' (citation)" *America OnLine, Inc. v. Superior Court (Mendoza),*

15   (2001) 90 Cal.App.4th 1, 9-10.  The CLRA's anti-waiver provision states: "Any waiver by a

16   consumer of the provisions of this title is contrary to public policy and shall be unenforceable and

17   void." Civ.Code § 1751.

18          15.    California's public policy is also aligned with the congressional purpose underlying

19   the Truth In Lending Act ("TILA"), 15 USC 1601 *et seq.*, which is to "assure a meaningful

20   disclosure of credit terms so that the consumer will be able to compare more readily the various

21   credit terms available to him and avoid the uninformed use of credit and to guard against the

22   danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise

23   confusing practices."

24          16.    "The [California Financing Law] 'shall be liberally construed and applied to

25   promote its underlying purposes and policies,' which include protecting California borrowers,

26   'ensur[ing] and adequate supply of credit to borrowers in this state,' and 'develop[ing] fair and

27   economically sound lending practices.' (*Fin. Code,* §22001, subd. (a).)" *The Commissioner of*

28

1    *Business Oversight v. Sezzle, Inc.* (2019) 2019 Cal. Sec. Lexis 151, CFL File No.: 60DBO-

2    104155.

3         17.    This Court has personal jurisdiction over Defendants because Defendants have

4    sufficient minimum contacts with California and/or Defendants otherwise purposely avail herself

5    of the markets in California by selling consumer goods and providing financing for those goods in

6    California, maintaining offices in California, employing workers in California, and advertising in

7    California. Defendants' purposeful availment of the markets in California renders the exercise of

8    jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9         18.    Venue is proper under 28 U.S.C. § 1391 because Defendants are subject to personal

10   jurisdiction in the Northern District of California, a substantial part of the events or omissions

11   giving rise to Plaintiff's claims occurred in this District, Plaintiff ANDRADE is a resident of this

12   District, and a substantial part of the property at issue is located in this District.

13        19.    <u>Intradistrict Assignment</u>:  Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to

14   the San Francisco and Oakland Division of the Northern District of California (the "Division") is

15   proper, because a substantial part of the property that is the subject of the action is situated in

16   Contra Costa county.  Defendant AFF provides financing for those goods in this Division, and

17   advertises in this Division. Plaintiff ANDRADE is a resident of this Division, and a substantial

18   part of the property at issue is located in this Division.

19                              **C. THE PARTIES**

20                         **I.    PLAINTIFF CLASS**

21        20.    The acts complained of herein occurred, at least in part, within the last four (4)

22   years preceeding the filing of the initial Complaint.  During the relevant statutory period, Plaintiffs

23   MARIA ANDRADE and SHAUN CAULKINS and the Class Members were induced to purchase

24   consumer goods from AFF retail associates under a scheme that precluded their access to AFF's

25   Security Agreement and had no knowledge of the essential terms—including the interest rates—of

26   those contracts.

27        21.    At all times during the class period, CLASS MEMBERS were customers of AFF

28   retail associates who unknowingly became customers of AFF.

22.     The Class was charged exorbitant interest on the loans funding these purchases of consumer goods, and when they attempted to contact the retail sellers, were informed that their loans had been "assigned" to AFF.  The loan documents later provided by AFF to Plaintiff demonstrate that the purchase contracts were never "assigned" but were computer generated on an AFF form obligating consumers to contact AFF alone regarding the terms of the loans.

## II. PLAINTIFFS

### Representative Maria Andrade

23.     At the time of her sales transaction, Plaintiff Maria Andrade was temporarily living in  Fresno County, California. Her permanent residence is in Contra Costa County, where she currently lives. On December 9, 2015, Andrade purchased several pieces of furniture from Elegant Furniture in Fresno California, totaling $1,201.62.

24.     At the time of purchase Ms. Andrade was neither informed that the sale was financed with AFF nor of the financing terms.  Ms. Andrade suffered financial damages as a result of AFF's failures to disclose the terms of the obligation. Had she known of the interest rates and other terms of the financing, Ms. Andrade would have refused to complete the transaction.  Ms. Andrade brings this litigation on her own behalf as well as other similarly situated individuals.

### Individual Plaintiff Shaun Caulkins

25.     Prior to filing this First Amended Complaint, the parties reached an agreement that Plaintiff Shaun Caulkins' claims would proceed individually and in arbitration. Mr. Caulkins' allegations remain in this complaint in the event that the Court is later asked to rule upon the arbitral award. Plaintiff Shaun Caulkins does not seek to be appointed as a class representative.

26.      At the time of the sales transaction, Plaintiff Shaun Caulkins was, and is, a resident of Stanislaus County, California. On November 21, 2015, Caulkins purchased several pieces of furniture from Bella's Furniture totaling $2,998.00.

27.     At the time of purchase, Mr. Caulkins was neither informed that the sale was financed with AFF nor of the financing terms asserted by AFF.  Mr. Caulkins suffered financial damages as a result of AFF's failure to disclose the terms of the obligation.  Had he known of the interest rates and other terms of the financing, Mr. Caulkins would have refused to complete the

1   transaction.  Mr. Caulkins brings this litigation on his own behalf as well as other similarly

2   situated individuals.

3       28.      During the Class Period (defined below) Ms. Andrade and Mr. Caulkins paid 120%

4   interest on purchases made at AFF affiliated businesses.

5                           **III.  Defendants**

6       29.      **Defendant AMERICAN FIRST FINANCE INC. ("AFF")** is organized and

7   incorporated under the laws of the State of Kansas with its principal place of business at 3515 N.

8   Ridge Rd, Ste 200, Wichita, KS 67205.

9       30.      Despite lacking a license to provide loans in California, AFF provides purchase

10  money loans for the sale of consumer goods through retailers with whom AFF has a preexisting

11  relationship. AFF promises almost instant credit approvals with little to no credit history.  AFF

12  provides loans of up to $5,000.00 for purchases of up to 120% of the consumer's income.

13      31.      **Defendant ELEGANT FURNITURE**, is, and at all relevant times herein was, a

14  business entity form unknown, doing business in the State of California, including the County of

15  Fresno as a retail seller of furniture to consumers, and as the fictitious business name of its true

16  owners, **Defendant AHMAD FAYEZ AL RAWASHDEH** and **Defendant MURAD FAYEZ**

17  **AL RAWASHDEH,** who transferred **ELEGANT FURNITURE** to **AHMAD FAYEZ AL**

18  **RAWASHDEH** during the class period.

19      32.      Plaintiff is informed and believes, and on that basis allege, that at all times stated

20  herein Defendants MURAD FAYEZ AL RAWASHDEH and AHMAD FAYEZ AL

21  RAWASHDEH were jointly and severally the principal, owner and operator of Defendant

22  ELEGANT FURNITURE, and that each is the principal and agent of the other, and the acts of

23  each as herein alleged are legally the acts of the other. Rawashdeh and Elegant Furniture are

24  jointly referred to herein as "Elegant Furniture."

25      33.      **Defendant BELLA'S FURNITURE**, is, and at all relevant times herein was, a

26  business entity form unknown, doing business in the State of California, including the County of

27  Stanislaus as a retail seller of furniture to consumers, and as the fictitious business name of its true

28  owner, **Defendant TERESA LOREDO**.

1    34.    Plaintiff is informed and believes, and on that basis allege, that at all times stated

2    herein Defendant TERESA LOREDO was the principal, owner and operator of Defendant

3    BELLA'S FURNITURE, and that each is the principal and agent of the other, and the acts of each

4    as herein alleged are legally the acts of the other. Loredo and Bella's Furniture are jointly referred

5    to herein as "Bella's Furniture."

6    35.    Plaintiff is informed and believes, and on that basis allege, that at all times

7    mentioned herein each Defendant, whether actually or fictitiously named herein, was the principal,

8    agent (actual or ostensible), or employee of each other Defendant, and in acting as such principal

9    or within the course and scope of such employment or agency, took some part in the acts and

10   omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the

11   relief prayed for herein.

12   36.    The true names and capacities of Defendants sued as Does 1 through 20 are

13   unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious

14   names. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1

15   through 20 when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that

16   each Defendant is jointly and severally responsible in some manner for the damages alleged

17   herein.

18   ### D.  FACTUAL ALLEGATIONS

19   #### 1.  AFF's Wrongful Scheme for Providing Consumer Loans in California

20   37.    Despite lacking a license to provide loans in California, AFF provides purchase

21   money loans for the sale of consumer goods through retailers with whom AFF has a preexisting

22   relationship.

23   38.    AFF targets its products to consumers with poor or little to no credit.

24   39.    AFF promises almost instant credit approvals with little to no credit history.

25   40.    AFF provides loans of up to $5,000.00 for purchases of up to 120% of the

26   consumer's income.

27

28

41.     AFF provides the loans through a standard "Security Agreement," differing only the interest rates and total amount of the loan based on the amount of the purchase and its evaluation of the borrower's credit rating.

42.     AFF mischaracterizes its loans as after-the-fact assignments of retail installment sales contracts.

43.     However, the California Finance Lenders Law looks to the actual substance rather than the form of the transaction, revealing their true nature as loans.

44.     AFF's involvement with the merchants goes beyond that necessary to effectuate the purchase of credit sales, in that:

a.  AFF recruits new merchants with the claim that merchants who offer AFF loans can "supercharge sales" and AFF decisions to finance loans will be "super fast!";

b.  AFF enters into Merchant Agreements with retailers prior to consumers contemplating a purchase of goods;

c.   Merchants are required to create an online account with AFF prior to offering AFF loans to consumers;

d.  AFF provides in-store marketing materials to merchants for AFF products, including a 90-day same as cash offer;

e.  AFF provides credit applications and "security agreement" forms that merchants are required to use;

f.  AFF provides in-person and online training to merchants on how to prepare and upload AFF forms to its website;

g.  AFF provides merchants with a hyperlink to AFF's pre-approval process that can be, and often is, integrated into the merchants' own retail website;

h.  AFF's loan agreement is a non-negotiable, clickthrough agreement, the terms of which are dictated by AFF, non-modifiable by the merchant and non-negotiable by consumers;

i.  Throughout the consumer purchase transaction, the role of AFF and the terms of the transaction are not fully disclosed to the consumer:

1      j.   AFF's retail partners are not true parties to the loan agreements;

2      k.   AFF makes the sole determination of consumers' credit worthiness;

3      l.   The Security Agreement "assigns" the consumer's loan to AFF at the point of sale

4           pursuant to the Merchant Agreement;

5      m.  AFF requires consumers to apply for the funds at the time of the retail sale transaction;

6      n.   AFF dictates all financing decisions; and

7      o.   AFF handles all administration of consumer loans.

8      45.    AFF made these loans in willful violation of California Finance Lenders Law and

9 even if not in willful violation has had more than 60 days since notification of the error to notify

10 the customer and correct the error.

11                 **2.  Facts as to Individual Plaintiff Shaun Caulkins**

12      46.    On or about November 21, 2015, Shaun Caulkins purchased several pieces of

13 furniture from Bella's Furniture in Modesto, California totaling $2,998.00.

14      47.    Mr. Caulkins completed a single page credit application at Bella's Furniture.

15      48.    The salesman, "Juan", told Caulkins that the payments for the furniture would be

16 about $160 every two weeks, and that if he paid for the furniture in full within 90 days of purchase

17 there would be no interest, but otherwise the interest would be about 27%.

18      49.    Bella's Furniture gave Mr. Caulkins a yellow carbon copy of a purchase order

19 describing the goods and the total amount due as $2,998.00.  This document does not disclose the

20 terms of financing.  This is the only sales document signed by Mr. Caulkins. A true and correct

21 copy of the purchase order between Caulkins and Bella's Furniture is attached hereto as Exhibit

22 "A."

23      50.    The next day, Caulkins returned to Bella's Furniture and provided a voided check

24 with the understanding that Bella's Furniture would set up automatic payment withdrawals from

25 that account.

26      51.    Without Mr. Caulkin's knowledge, Bella's Furniture electronically prepared an

27 eight page "Security Agreement" which specified an annual percentage rate of 120%.  Mr.

28

1    Caulkins was not shown the "Security Agreement", did not sign it, and was not given a copy at the

2    time of sale.

3          52.     On November 21, 2015, Bella's Furniture "assigned" this installment sale to AFF.

4    However, this "assignment" was a sham as evidenced in the pre-printed terms of the AFF contract

5    requiring consumers to contact AFF regarding payments, terms, or other contractual concerns.

6          53.     Beginning December 29, 2015, AFF withdrew $162.00, twice a month, from Mr.

7    Caulkins checking account.

8          54.     In about February 2016, Caulkins inquired with Bella's Furniture as to the balance

9    of the loan. Bella's Furniture told Caulkins he would have to contact AFF directly about his

10   payments, and refused to provide him with a copy of the actual loan agreement.  At this time

11   Bella's Furniture added a handwritten note to Plaintiff's copy of the purchase order indicating the

12   telephone number of AFF and his account number.

13         55.     Caulkins then contacted AFF and was told that he still owed $2,800 on the loan.

14   After several demands to AFF to provide him with a copy of the purported loan agreement,

15   Caulkins received a copy from AFF and was shocked to learn that the finance rate for the furniture

16   loan was 120% and he would end up paying more than twice what the furniture was sold for.

17         56.     Mr. Caulkins was not presented with the loan agreement or loan terms at any time

18   prior, and would not have purchased the furniture if he had known of the true terms of the loan.

19   Caulkins was never sent a statement from AFF or notified by AFF in any way that it carried the

20   loan or what the loan terms were. In about August 2016, Caulkins stopped the automatic payment

21   withdrawals from his bank account.  Thereafter AFF began a campaign to collect the loan balance

22   from Caulkins. A true and correct copy of the loan agreement between AFF (or in the alternative,

23   Bella's Furniture) is attached hereto as Exhibit "B."

24         57.     On about January 19, 2017, Caulkins sent a demand for correction letter to Bella's

25   Furniture and AFF, in compliance with Civ.Code §1782. Neither Bella's Furniture nor AFF

26   responded to this letter.

27         58.     Subsequent to the filing of the initial Complaint, Plaintiff Caulkins agreed to

28   arbitrate his claims against Defendants.

### 3.   Facts as to Plaintiff and Putative Class Representative Maria Andrade

59.     On about December 9, 2015, Andrade purchased several pieces of furniture from Elegant Furniture in Fresno, California, totaling $1,201.62, and was not informed at the time of purchase that the sale was going to be financed with AFF and was not informed of any financing terms.  The salesman, "Tru", told Andrade that the payments for the furniture would be about $100 every month and that if she paid for the furniture in full within 90 days of purchase there would be no interest. Andrade signed the purchase order. Andrade was not informed about AFF and believed that her payments would be made to Elegant Furniture. At the conclusion of the sale transaction, "Tru" stated he needed Andrade to  confirm her debit account number for payment deductions. He gave her a computer mouse and asked her to click the mouse to verify her account number. She was not shown the face of the computer to know what she was authorizing by the mouse click, and believed she was only authorizing  an automatic payment.

60.     Elegant Furniture presented Ms. Andrade with a purchase order describing the furniture, and the tax and delivery to be charged.  Ms. Andrade initialed a note on the purchase order stating "90 days same as cash".  This is the only reference to financing on the purchase order.  This is the only sales document signed by Ms. Andrade, and the only sales document provided to her by Elegant Furniture. A true and correct copy of the purchase order between Andrade and Elegant Furniture is attached hereto as Exhibit "C."

61.     Without Ms. Andrade's knowledge, Elegant Furniture electronically prepared an eight page "Security Agreement" which specified an annual percentage rate of 120%.  Ms. Andrade was not shown the "Security Agreement", did not sign it, and was not given a copy at the time of sale.

62.     On December 9, 2015, Elegant Furniture "assigned" this installment sale to AFF. However, this "assignment" was a sham, as evidenced in the preprinted terms of the AFF contract, which direct the consumer to contact only AFF regarding payments, terms, or other contractual concerns.

63.     On January 6, 2016, and once a month thereafter, AFF debited Ms. Andrade's account $143.41.  Ms. Andrade assumed the difference between the stated amount and the amount debited was due to an interest charge.

64.     Ms. Andrade determined that her final payment would be debited on or around September 1, 2016.  Ms. Andrade went to Elegant Furniture to verify her last payment date, and was told that she had no contract with them, but a contract with AFF, and would have to contact AFF directly about her payments.  Elegant Furniture provided Plaintiff with her AFF account number and a phone number for AFF.

65.     Andrade then contacted AFF and was told that she still owed $800 on the loan. After several demands to AFF to provide her with a copy of the purported loan agreement, Andrade received a copy from AFF and was shocked to learn that the finance rate for the furniture loan was 120% and she would end up paying more than twice what the furniture was sold for.

66.     Andrade was not presented with the loan agreement or loan terms at any time prior, and would not have purchased the furniture if she had known of the true terms of the loan. Andrade was never sent a statement from AFF or notified by AFF in any way that it carried the loan or what the loan terms were. Andrade continued to make payments for fear of damaging her credit if she stopped, but made several calls to AFF attempting to resolve her concerns. On about February 2, 2017, AFF offered to wipe out the loan balance if Andrade made one more payment on the loan. Believing that she was a victim of unscrupulous business practices, Andrade refused and stopped the payment withdrawals from her bank account in March of 2016. Thereafter AFF began a campaign to collect the loan balance from Andrade, including placing calls to her family members.  On about March 21, 2017, Andrade sent a letter to AFF withdrawing authorization to withdraw funds or to contact her by any means other than by letter.  A true and correct copy of the loan agreement between Andrade and Elegant Furniture is attached hereto as Exhibit "D."

67.     On about January 20, 2017, Andrade sent a demand for correction letter to Elegant Furniture and AFF, in compliance with Civ.Code §1782. Neither Elegant Furniture nor AFF responded to this letter.

### E.  CLASS ALLEGATIONS

68.     Plaintiff Maria Andrade seeks to certify a statewide class comprising:

**All California residents who purchased consumer goods from AFF affiliated retail businesses and who AFF claims are or were bound to the terms of it's Security Agreement during the Class Period.**

69.     The Class period begins four years prior to the date of filing of the initial complaint through the date of class certification ("Class Period").

70.     This action has been brought and may properly be maintained as a class action, pursuant to the provisions of FRCP 23.

a) **Numerosity:**  The Plaintiff Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of class members is unknown to Plaintiff at this time, AFF has sold and continues to sell to class members hundreds of Financed Products daily in California and throughout the United States.  Thus the class is so numerous as to make joinder impracticable, if not impossible.

b) **Common Questions Predominate:**  AFF has acted (by selling Financed Products) and refused to act, on grounds generally applicable to the class.  These common issues of fact and law predominate over any arguable individualized issues.  Common issues include:

i)     Whether AFF lacked a license to provide consumer loans in California at the time it made the consumer loans to the Class;

ii)    Whether AFF's representations regarding the terms of sale of financed products were false and misleading, and unlawfully, unfairly, fraudulently, or unconscionably deceived class members into believing that their purchase agreements were with the individual furniture store, when they were not;

iii)   Whether AFF's scheme of marketing financial products indirectly to consumers without their knowledge  is unfair, fraudulent, and unconscionable;

iv) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the California Legal Remedies Act, Civ.Code §1780 *et seq.*;

v) Whether AFF's scheme of marketing financial products indirectly to consumers witthout their knowledge violates the Truth in Lending Act, 15 USC 1601 *et seq.*;

vi) Whether AFF's scheme of marketing financial products through its co conspirators to consumers without their knowledge violates the Racketeer Influenced Corrupt Organizations Act ("RICO "), 18 U.S.C. § 1961 *et seq.*; and,

vii) Whether the class has been damaged and, if so, the appropriate measure of damages, including the nature of the equitable relief to which the class is entitled.

c) **Typicality**   Plaintiff's claims are typical of the claims of the other members of the class because Plaintiff and all of the class members' damages arise from and were caused by purchasing consumer goods financed by AFF. As a result, the facts and the law regarding AFF's alleged wrongful conduct are identical for Plaintiff and all of the class members.

d) **Adequacy:** Plaintiff will fairly and adequately protect the interests of the members of the class, and Plaintiff has no interests that are contrary to or in conflict with those of the class they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation to prosecute this action vigorously.

e) **Superiority:**   A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractible.  The disposition of Plaintiff's claims in a class action will benefit both the parties and the Court, because Plaintiff's claims are identical to those of the proposed class and claims and defenses by the representative party are identical.  Class action treatment will permit a large number of similarly situated persons to prosecute relatively

1   small common claims in a single form simultaneously without duplication of expending

2   personal and Court resources in individual actions.

3          Furthermore, the damage suffered by each individual member of the class may be

4   relatively small, the burden of individual litigation make it difficult or impossible for

5   individual members of the class to redress the wrongs done to them.  Additionally,

6   important public interest will be served by addressing the matter as a class action, while

7   individualized litigation would present the potential for inconsistent or contradictory

8   judgments, which would establish incompatible standards of conduct for the party

9   opposing the class and would lead to repetitious trials of the numerous common questions

10   of facts and law.

11          71.     As a result a class action is superior to other available methods for the fair and

12   efficient adjudication of this controversy. Proper and sufficient notice of this action may be

13   provided to the class members using AFF's electronic database of customer information and any

14   other customer contact information in AFF's possession or control.

15          72.     Plaintiff and the members of the class have suffered irreparable harm and damages

16   as a result of AFF's wrongful conduct as alleged herein. Absent a representative action, Plaintiff

17   and the members of the class will continue to suffer losses, thereby allowing these violations of

18   law to proceed without remedy.

19   **FIRST CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

20   **(Violation of the Consumers Legal Remedies Act,**

21   **California Civil Code § 1750 et seq.)**

22   **Against all Defendants**

23          73.     Plaintiff incorporates by reference the foregoing allegations.

24          74.     Plaintiff and the Class are "consumers" as defined by Civil Code §1760(d).

25          75.     Elegant Furniture is a "person" providing "goods" and "services" to "consumers"

26   as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

27          76.     Bella's Furniture is a "person" providing "goods" and "services" to "consumers" as

28   part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

77.     AFF is a "person" providing "goods" and "services" (services means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods)  to "consumers" as part of a "transaction" as defined in Civil Code § 1761(a), (b), (c), (d) and (e).

78.     Defendants have a duty to disclose the terms of sale but refused and failed to do so. Defendants misrepresented the terms of sale, and concealed and failed to disclose the true terms of sale.  As the originator of the sales contracts, AFF's practices allowed it to charge exorbitant interest that remained undisclosed to the Plaintiff class unless and until class members directly contacted AFF of whom they had no knowledge at the time of sale.  As the Plaintiff and the class were ignorant of the role of AFF in their purchases, they remained ignorant of the terms of those purchases.

79.     By engaging in the misrepresentations, concealments, and false statements alleged above, Defendants have violated Civil Code § 1770(a)(2), 3), (5), (7), (9), (13), (14), (16) and (19).

80.     Defendants engaged in the acts and practices herein alleged as part of a pattern, plan, and scheme directed at Plaintiff and similarly-situated members of the public, with intent to deceive and induce the purchase of consumer goods at undisclosed and unconscionable interest rates, and increase the cost of those goods to the benefit of Defendants, and to the monetary detriment of Plaintiff and the public.

81.     Plaintiff has complied with all obligations required under Civil Code § 1750, et seq., including requesting that defendants cure or correct the violations 30 or more days prior to the filing of this action, which defendants have failed or refused to do.

82.     Plaintiffs have complied with all obligations required of them under Civil Code § 1750, et seq., including requesting that defendants cure or correct the violations, which defendants have failed or refused to do.

83.     As a result of said violations, Plaintiff and the class have suffered and continue to suffer actual damage, incidental and consequential damages, and request restitution, and attorney's fees and costs according to proof.

84.     Plaintiff on behalf of those similarly situated, seek restitution and injunctive relief pursuant to California Civil Code § 1780. The Consumers Legal Remedies Act, Civil Code § 1750 et seq., is designed to protect consumers against unfair and deceptive business practices. It applies to AFF's conduct because it covers transactions that are intended to result or that actually resulted in the sale or lease of goods and services to consumers.

85.     Defendants did the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiff and class members, thus allowing punitive damages, according to proof.

## SECOND CAUSE OF ACTION FOR EQUITABLE RELIEF

### (Violation of the Unfair Competition Law,

### California Business and Professions Code § 17200 et seq.)

### Against all Defendants

86.     Plaintiff incorporates by reference the foregoing allegations.

87.     Under the Unfair Competition Law ("UCL"), unfair competition includes any "unlawful," "unfair," or "fraudulent" business act or practice.

88.     The Law authorizes equitable relief for violations, under Bus. & Prof. Code § 17203.

89.     Beginning at an exact date unknown to Plaintiff but at least since four years prior to initiating this action, Defendants committed acts of unfair competition, as defined by, and in violation of Bus. and Prof. Code § 17200 by:

a.     providing loans to California consumers without a valid license to do so;

b.     failing to disclose finance terms at the time of sale;

c.     concealing exorbitant and unconscionable finance rates;

d.     refusing and failing to provide consumers with a copy of the Security Agreement;

e.     failing to notify consumers where to obtain loan and financing information;

f.     misleading consumers as to the existence of financing by AFF;

g.     willfully charging, contracting for, or receiving amounts not authorized by the California Lender Finance Law, Cal. Fin. Code §22000 *et seq.*

h.      failing to correct its violations of the California Lender Finance Law within the statutorily prescribed period; and,

i.      failing to provide meaningful disclosure of financing provisions in violation of the Truth in Lending Act, ("TILA"), 15 USC 1601 *et seq.*, including improper disclosure of the amount financed, finance charge, payment schedule, total of payments, annual percentage rate, and security interest disclosures;

90.    Defendants' above-mentioned policies and practices are unlawful, unfair, and fraudulent, and likely to mislead the general public and, consequently, constitute an unlawful, deceptive, and fraudulent business act or practice within the meaning of Bus. and Prof. Code § 17200.

91.    The above acts and practices violate Business & Professions Code § 17200, et seq. in that they are unlawful, unfair, and fraudulent.

92.    As a direct result of the aforementioned acts, Defendants received and continue to hold ill-gotten gains belonging to Plaintiff and class members.  Plaintiff seeks to enjoin Defendants from engaging in said practices which will continue to injure and harm the members of the public who unwittingly purchase consumer goods without disclosure of AFF's financing unless and until enjoined from doing so by this court.  Plaintiff also seeks restitution of all money and property unlawfully obtained by Defendants from Plaintiff together with attorneys' fees and costs according to proof.

**THIRD CAUSE OF ACTION**

**(Violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"),**

**18 U.S.C. § 1961 *et seq.* on behalf ofthe Class and against all Defendants)**

93.    Plaintiff incorporates by reference the foregoing allegations.

94.    18 U.S. C.§ 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or racketeering activity or collection of unlawful debt."

95.     18 U.S.C. § 1964(c) creates a private right of action for any person injured in his business or property by reason of violation of 18 U.S.C. § 1962, and provides for threefold damages sustained as well as recovery for the cost of the suit, including reasonable attorneys fees.

96.     Defendants AFF, Bellas Furniture, Elegant Furniture, and the unnamed Doe Defendants are all "persons" as defined by 18 U.S.C. § 1961(3) because they are all business entities capable of holding legal interest in property.

97.     Plaintiff, and the members of the putative class, are "persons" as defined by 18 U.S.C. § 1961(3).

98.     As described in the Complaint, Defendants AFF, Bellas Furniture, Elegant Furniture, and the unnamed Doe Defendants are all "associated in fact" such that they constitute an "Enterprise" as defined by 18 U.S.C. § 1961(4).

99.     As described in the Complaint, Defendants AFF, Bella's Furniture, and Elegant Furniture, engaged in a "pattern of racketeering activity" by committing at least two acts of racketeering activity after the effective date of RICO and also within ten years of each individual act. Specifically, Defendants' actions described in the Complaint violate the following provisions:

a.   The federal wire fraud statute, 18 U.S.C. § 1343, which is identified by 18 U.S.C.

§ 1961(1) as a predicate act for purposes of racketeering. It provides in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C.A. § 1343 (West 2010)

b.   The federal mail fraud statute, 18 U.S.C. § 1341, which is identified by 18 U .S.C. §

1961 (1) as a predicate act for purposes of racketeering. It provides in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything

represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attemr.ting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1341 (West 2010).

## I.  The Associated in Fact Enterprise

100.     The "Associated in Fact Enterprise" consists of Defendant AFF, Defendant Bellas Furniture, Defendant Elegant Furniture and the yet-unnamed Doe Defendants. Every member of the Enterprise participated in the process of obtaining, transmitting, billing, and collecting fraudulent, unauthorized charges by AFF to the Plaintiff and members of the Classes. The Enterprise committed these acts in a coordinated fashion for the common purpose of defrauding consumers and sharing in the profits of this fraud.

101.     Each member of the Enterprise played a role and acted in mutual reliance for the common purpose of obtaining, transmitting, billing and collecting fraudulent, unauthorized charges on AFF's bills.

## II.  The Pattern of Racketeering

102.     Beginning at least four years prior to the filing of this Complaint, AFF adopted and implemented a uniform, nationwide scheme to defraud its customers by billing and collecting a percentage of fraudulent and unauthorized charges from its customers. For the purposes of implementing this fraudulent scheme, AFF associated itself and entered into nearly identical contractual relationships with retailers such as Defendants Bellas Furniture and Elegant Furniture. AFF allows Retailers to entrap consumers into loans with AFF without their knowledge or consent enabling AFF to fraudulently charge customers exorbitant and unconscionable interest rates.

103.     Pursuant to this scheme, Defendant AFF has designed and implemented one common, uniform nationwide scheme to defraud its customers. AFF's contracts with the retailers, such as Bella's Furniture and Elegant Furtniture, and the billing and collection systems used for

1   purposes of implementing the nationwide fraudulent scheme, is one common, uniform, nearly

2   identical system of provisions and rules used in virtually an identical manner in each state

3   nationwide in which AFF provides consumer financing services.

4          104.    Within the past four years, AFF has billed and collected millions of dollars in

5   unauthorized charges pursuant to the above-described fraudulent scheme to bill and collect

6   unauthorized charges from its customers.

7          105.    Within the past four years, AFF has knowingly, intentionally, and/or recklessly

8   engaged in an ongoing, pattern of racketeering activity under 18 U.S.C. §1962(c) by committing

9   the predicate acts of wire and mail fraud by knowingly and intentionally implementing a scheme

10  to bill and collect millions of dollars of unauthorized charges from its customers.

11         106.    AFF, having devised or intending to devise a scheme or artifice to defraud its

12  customers, for the purpose of executing such scheme or artifice or attempting to do so, placed

13  and/or knowingly cause to be placed in a post office or authorized depository for mail matter,

14  documents and/or packages to be sent or delivered by the Postal Service or private or commercial

15  interstate carrier, and/or received from these entities such documents and/or packages, including

16  but not limited to (1) bills mailed to AFF customers that contained fraudulent, unauthorized

17  charges, (2) the receipt of payments electronically withdrawn from customers payment accounts

18  for fraudulent, unauthorized charges, (3) billing and collection agreements between AFF and/or

19  third party retailers, and (4) correspondence regarding the foregoing.

20         107.    AFF, having devised or intending to devise a scheme or artifice to defraud its

21  customers, for the purpose of obtaining money from the customers by means of false or fraudulent

22  pretenses, representations, or promises as to fraudulent and unauthorized credit charges,

23  transmitted or caused to be transmitted by means of wire communication in interstate or foreign

24  commerce, writings, signs, signals, and pictures, for the purpose of executing such scheme or

25  artifice, including by the (1) transmission of undisclosed, unauthorized charges by third-party

26  providers to billing aggregators for the purposes of ultimately being billed and collected by AFF

27  pursuant to the scheme; (2) transmission of undisclosed, unauthorized charges by affiliated sales

28  locations such as Bellas Furniture and Elegant Furniture to AFF, for purposes of ultimately being

electronically collected by AFF pursuant to the scheme; (3) by transmitting e-mail communications relating to the process of obtaining, transmitting, and collecting fraudulent, undisclosed, unauthorized charges from the payment accounts of members of the Class; (4) by communicating with members of the Class via telephone wire and representing to them that the fraudulent charges were consented to when in fact were not; and (5) by collecting funds from customers via electronic fund transfers or electronic communications with the consumer's bank or credit card institution and transmitting payment from those accounts to AFF.  As part of this pattern of racketeering, AFF has used the Enterprise to increase profits to the detriment of AFF customers residing in California and across the United States where AFF operates its unlawful scheme.

108.    The interstate commerce requirement of a RICO claim is satisfied here because the racketeering claims alleged in this Complaint arise out of, and are based on, Defendant's use of the Internet and agreements with entities in other states in conjunction with the process of obtaining, transmitting, billing and collecting fraudulent charges by AFF to the members of the Class, in furtherance of the racketeering scheme as alleged in this Complaint.

109.    The pattern of racketeering activity described in this Complaint is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering activities.

110.    Plaintiff and the putative class members are the only direct victims of AFF's wrongful and unlawful conduct. Plaintiff and the class members directly paid AFF money for undisclosed and unauthorized charges, including money that was in the custody or control of a financial institution.

111.    Plaintiff and the putative class were injured because they were charged for and paid for a service that they did not authorize, and because they were the primary and intended victims of the scheme to defraud. It was a foreseeable and natural consequence of AFF's scheme that customers would pay for the unauthorized charges. There are no independent factors that account for Plaintiff's and the putative class members' economic injuries. There is no risk of duplicative recoveries by Plaintiff and the putative class.

112.    There are no other, more immediate victims better situated to sue for the RICO violations at issue, given that Plaintiff and the putative class members were billed for and paid the unauthorized charges.

113.    Plaintiff were the victim of the scheme to defraud customers by being charged for and paying for undisclosed and unauthorized charges. Numerous other class members were exposed to the same scheme to defraud.

114.    As a direct and proximate result of Defendants' scheme, Plaintiff and the putative class members have lost money comprised of the amounts paid for undisclosed and unauthorized charges, in an amount to be calculated with greater accuracy based on information in the Defendants' records.

115.    As a direct and proximate result of the racketeering activities described in the Complaint, Plaintiff and the putative class members are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of the lawsuit and reasonable attorneys' fees under 18 U.S.C. § 1964(c).

116.    As a direct and proximate result of the racketeering activities described in this Complaint, Plaintiff, on behalf of herself and the putative class members, are entitled to an Order, under 18 U.S.C. § 1964(a) enjoining and prohibiting Defendants from engaging in the unlawful conduct that the Enterprise has engaged in.

**FOURTH CAUSE OF ACTION**

**(Conspiracy to Violate the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.**

**§ 1961 et seq. on behalf of the Class and against all Defendants)**

117.    Plaintiff incorporates by reference the foregoing allegations.

118.    Defendants and the unnamed Doe Defendants have conspired with each other to carry out the Enterprise pleaded above and to violate § 1962(c), as alleged above, in violation of 18 U.S.C. § 1962(d). Each has aided, assisted, and abetted the others in carrying out and attempting to carry out the Enterprise.

119.    As alleged above, each Defendant by words or action manifested an agreement to commit two or more predicate acts in furtherance of the common purpose of the RICO Enterprise.

120.   As alleged above, each Defendant knew of the conspiracy's goals and agreed to facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other things, two predicate acts of mail and/or wire fraud.

## FIFTH CAUSE OF ACTION

### Pled In The Alternative

**(Violation of the Unruh Act, Civil Code § 1801, *et seq*. on behalf of the Class)**

### Against all Defendants

121.   Plaintiff incorporates by reference the foregoing allegations.

122.   Plaintiff pleads this cause of action for violation of the Unruh Act in the alternative should there be a determination in this action that Defendant AFF does not provide consumer loans that require licensure in California as described throughout this First Amended Complaint.

123.   Plaintiff and the Plaintiff Class are "retail buyers" of "goods" under a "retail installment contract" as those terms are defined by Civil Code §§ 1802.4, 1802.1, 1802.6.

124.   Elegant Furniture is a "person" and "retail seller" in the business of selling "goods" or funishing services to "retail buyers" as defined in Civil Code §§ 1802.15, 1802.1, 1802.3, 1802.4.

125.   Bella's Furniture is a "person" and "retail seller" in the business of selling "goods" or funishing services to "retail buyers" as defined in Civil Code §§ 1802.15, 1802.1, 1802.3, 1802.4.

126.   AFF is a "person" and "retail seller" in the business of selling goods or funishing services to retail buyers as defined in Civil Code §§ 1802.15, 1802.3.

127.   AFF is a "holder" who acquired the retail installment contract or installment account executed, incurred or entered into by a retail buyer, and/or the financing agency or other assignee of the installment contract or account, as defined in Civil Code § 1802.13.

128.   Defendants have a duty to disclose the terms of sale in a single document that contains the entire agreement of the parties with respect to the cost and terms of payment for the goods and services and other evidences of indebtedness between the parties relating to the transaction. Defendants only provided a bill of sale on the date of purchase and refused and/or

1   failed to provide the associated retail installment contract until many months later.  (Civ.Code

2   §1803.2.)

3        129.    Defendants have a duty to disclose the true terms of sale but refused and failed to

4   do so, including:

5        a.     failing and/or refusing to provide the terms of sale on the bill of sale and

6   misrepresenting the terms of sale on the retail installment contract (Civ.Code §1803.3.);

7        b.     failing and/or refusing to include a description of the goods or services sufficient to

8   identify them on the retail installment contract (Civ.Code §1803.3(a));

9        c.     failing and/or refusing to deliver to the buyer at the time of the buyer's signature a

10   legible copy of the contract (Civ.Code §1803.7);

11        d.     failing and/or refusing to disclose to the buyer before the first transaction is made

12   on a retail installment contract mandatory disclosures in a single written statement (Civ.Code

13   §1810.1); and,

14        e.     failing and/or refusing to deliver to the buyer for each billing cycle a statement

15   setting forth mandatory disclosures regarding the account balances, finance terms and charges, and

16   payments applied (Civ.Code §1810.3).

17        130.    As the originator of the sales contracts, AFF's practices allowed it to charge

18   exorbitant interest that remained undisclosed to the Plaintiff class unless and until class members

19   directly contacted AFF of whom they had no knowledge at the time of sale.  As the Plaintiff was

20   ignorant of the role of AFF in their purchases, Plaintiff remained ignorant of the terms of those

21   purchases and rights under the contract.

22        131.    Defendants engaged in the acts and practices herein alleged as part of a pattern,

23   plan, and scheme directed at Plaintiff and similarly-situated members of the public, with intent to

24   deceive and induce the purchase of consumer goods at undisclosed and unconscionable interest

25   rates, and increase the cost of those goods to the benefit of Defendants, and to the monetary

26   detriment of Plaintiff and the public.

27        132.    Plaintiff requested that defendants cure or correct the violations 30 or more days

28   prior to the filing of this action, which defendants have failed or refused to do.

133.    Because Plaintiff was not shown and did not receive a copy of the retail installment contract, she was not aware of nor did she consent to terms under the contract, including the pre-dispute resolution procedure and arbitration provision.

134.    As a result of said violations, Plaintiff and the class have suffered and continue to suffer actual damage, incidental and consequential damages, and request restitution, recovery of finance charges and any delinquency, collection or other allowable fees imposed under the contract (Civ.Code §1812.7), plus attorney's fees and costs according to proof. (Civ.Code §1811.1.)

135.    Defendants did the above acts willfully, fraudulently, oppressively, maliciously, and with intent to injure and damage Plaintiff and class members, thus allowing the buyer to recover an amount equal to three times the total of the finance charges and any delinquency, collection, extension, deferral or refinance charges imposed, contracted for or received, according to proof. (Civ. Code §1812.9.)

**SIXTH CAUSE OF ACTION**

**(Money Had and Received)**

**Against Defendant AFF**

136.    Plaintiff incorporates by reference the foregoing allegations.

137.    AFF received money belonging to Plaintiff when it electronically transferred Plaintiff's money from her bank accounts.  AFF benefited from the receipt of Plaintiff's money and retained it. AFF is obligated to make restitution to Plaintiff for her purchases of financed products.

138.    AFF received money belonging to the other class members when it collected financing payments. AFF benefited from receipt of their money and retained it. AFF is obligated to make restitution to the class members for their purchases of financed products.

/ / /

/ / /

/ / /

1

**PRAYER FOR RELIEF**

2      THEREFORE, Plaintiff prays that the Court:

3      1.      Certify this matter as a class action with the class defined as set forth above,

4    appoint Plaintiff as representatives of the Class, and appoint their attorneys as Class Counsel;

5      2.      Declare that AFF's Security Agreements are loans subject to the California Finance

6    Lenders Law;

7      3.      Declare that AFF did not have the licensing required by the California Finance

8    Lenders Law necessary to offer and fund loans in California;

9      4.      Declare that AFF's Security Agreements are void and that no person has any right

10   to collect or receive any principal, charges, or recompense in connection with the transaction; and

11   all payments received to date are to be refunded;

12     5.      Preliminarily and permanently enjoin AFF from engaging in the practices

13   delineated in the Complaint which continue to injure and harm the members of the public who

14   unwittingly purchase consumer goods subject to AFF loans and similarly enjoin the other

15   Defendants from engaging in the conduct described in this Complaint as violations of federal and

16   state consumer protection statutes;

17     6.      Enter an order for restitution to the Class for all principal, interest, charges, or

18   recompense in connection with the transaction paid to AFF during the class period and

19   disgorgement of all profits;

20     7.      Award monetary damages, including incidental and consequential damages,

21   according to proof;

22     8.      Award all statutory, treble, or punitive damages available under the law;

23     9.      Award Plaintiff and those similarly situated, reasonable attorneys' fees and costs of

24   suit; and

25     10.     Award Plaintiff and those similarly situated such other and further relief as the

26   Court may deem appropriate, just, and proper.

27   / / /

28   / / /

1

Dated:  June 1, 2020

2

Respectfully submitted,

3

**CONSUMER LAW PRACTICE**                         **LAW OFFICE OF A.L. HINTON**

4

**OF DANIEL T. LEBEL**

5

 */s/ Daniel T. LeBel*                                             */s/ Alicia Hinton*

6

Daniel T. LeBel                                                   Alicia L. Hinton

7

PO Box 720286                                                 1616 W. Shaw Ave., Suite B7
San Francisco, CA 94172                            Fresno, CA  93711

8

Telephone: (415) 513-1414                         Telephone:  (559) 691-6900
Fascimile: (877) 563-7848                           Fascimile: (559) 421-0373

9

10

*Counsel for Individual Plaintiffs and the*

11

*Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT CASE NO.: 18-CV-6743