1  ROBERT S. GREEN (SBN 136183)
   JAMES ROBERT NOBLIN (SBN 114442)
2  EMRAH M. SUMER (SBN 329181)
3  **GREEN & NOBLIN, P.C.**
   2200 Larkspur Landing Circle, Suite 101
4  Larkspur, CA  94939
   Telephone:  (415) 477-6700
5  Facsimile:  (415) 477-6710
   Email:  gnecf@classcounsel.com
6
7  ALICIA HINTON (SBN 292849)            JAMES C. STURDEVANT (SBN 94551)
   **LAW OFFICE OF A.L. HINTON**          **THE STURDEVANT LAW FIRM, APC**
8  1616 W. Shaw Ave., Suite B7           P. O. Box 151560
   Fresno, CA 93711                      San Rafael, CA 94915
9  Telephone:  (559) 691-6900            Telephone: (415) 477-2410
   Facsimile:  (559) 421-0373
10 Email:  alicia@alhintonlaw.com        Email:  jsturdevant@sturdevantlaw.com
11
   Attorneys for Plaintiff
12 MARIA ANDRADE

13
14                    **UNITED STATES DISTRICT COURT**
15                 **NORTHERN DISTRICT OF CALIFORNIA**
16

| | |
|---|---|
| MARIA ANDRADE, et al., | Case No.:  3:18-cv-06743-SK |
| Plaintiff, | <span style="color:red">**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**</span> |
| vs. | **PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT** |
| AMERICAN FIRST FINANCE, INC., et al. | |
| Defendants. | Date:      December 5, 2022<br>Time:      9:30 a.m.<br>Location:  Zoom<br>Judge:     Hon. Sallie Kim |

1
2

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................... 1

II.   LEGAL STANDARDS ......................................................................... 4

III.  ARGUMENT ........................................................................................ 4

    A.    AFF is not Entitled to Partial Summary Judgment on Andrade's CLRA and UCL Claims ........................................................ 4

       1.    AFF's Transaction with Plaintiff Andrade was not Fully Disclosed ................................................................ 6

       2.    AFF's Transactions Were Not Well-Intentioned ..................... 7

       3.    Beyond *Boerner*: *Commissioner of Business Oversight v. Sezzle, Inc.* ....................................................... 9

       4.    AFF's Attempts to Revise the Testimony of Plaintiff's Expert, Adam Levitin, are Disingenuous and do not Support Summary Judgment ....................................... 12

    B.    Plaintiff Has Alleged a Viable Claim Under the CLRA. ................. 16

    C.    AFF is not Entitled to Summary Judgment on the Unruh Claim ...... 19

    D.    Andrade has Constitutional Standing to Seek and Obtain a Permanent Injunction. ......................................................... 22

IV.   CONCLUSION ................................................................................... 24

00123698.000

1

## TABLE OF AUTHORITIES\

2

### FEDERAL CASES

3

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242, 249 (1986) ............................................................................4

4

*Celotex Corp. v. Catrett*
   477 U.S. 317, 323 (1986) .........................................................................1, 4

5

6

*Commissioner of Business Oversight v. Sezzle, Inc.*
   2019 WL 8194406 (December 30, 2019).................................................9, 10, 11

7

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*
   2016 U.S. Dist. LEXIS 130584 (C.D. Cal. Aug. 31, 2016) ....................................18

8

*Corson v. Toyota Motor Sales, U.S.A., Inc.*
   2013 U.S. Dist. LEXIS 189262 at *15 (C.D. Cal. July 18, 2013).........................18

9

10

*Estate of Migliaccio v. Midland Nat'l Life. Ins. Co.*
   436 F.Supp.2d 1095 (C.D. Cal. 2006) .............................................................17

11

*Jefferson v. Chase Home Fin., LLC*
   2007 U.S. Dist. LEXIS 36298, *3 (N.D. Cal. May 3, 2007).................................17

12

13

*Kaiser v. Cascade Cap., LLC*
   989 F.3d 1127 (9th Cir. 2021) .......................................................................4

14

*Killgore v. SpecPro Pro. Servs., LLC*
   2022 U.S. App. LEXIS 29227, at *17 (9th Cir. Oct. 20, 2022) ..............................4

15

16

*Poghosyan v. First Fin. Asset Mgmt.*
   2020 U.S. Dist. LEXIS 14137 (E.D. Cal. Jan. 27, 2020) .....................................17

17

*Ricci v. DeStefano*
   557 U.S. 557 (2009) ...................................................................................4

18

19

*Robins v. Spokeo*
   867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 931(2018) .........................23

20

*Spokeo v. Robins*
   578 U.S. 330 (2016) ..................................................................................22

21

22

### STATE CASES

23

*Alborzian v. JPMorgan Chase Bank, N.A.*
   235 Cal.App.4th 29 (2015).............................................................................17

24

*Boerner v. Colwell Co.*
   21 Cal.3d 37 (1978)..............................................................................passim

25

26

*Cabatit v. Sunnova Energy Corp.*
   60 Cal.App.5th 317 (2020)...........................................................................8

27

*De La Torre v. CashCall, Inc.*
   5 Cal.5th 966 (2018)...........................................................................passim

28

-ii-

*Fairbanks v. Superior Court*
  46 Cal.4th 56 (2009) ......................................................................................17

*Front Line Motor Cars v. Webb*
  35 Cal.Ap.5th 153 (2019) ..............................................................................12

*Gutierrez v. Carmax Auto Superstores California*
  19 Cal.App.5th 1234 (2018) ...........................................................................18

*Kagan v. Gibraltar Sav. & Loan Ass'n.*
  35 Cal.3d 582 (1984) ......................................................................................17

*Kunert v. Mission Financial Services Corp.*
  110 Cal.App.4th 242 (2003) ...........................................................................12

*Massachusetts Mutual Life Ins. Co., v. Sup. Ct.*
  97 Cal.App.4th 1282 (2002) ...........................................................................18

*Meyer v. Spectrum LP*
  45 Cal.4th 634 (2009) ......................................................................................17

*Morgan v. Reasor Corp.*
  69 Cal. 2d 881 (1968) ......................................................................................21

*Opportunity Financial, LLC v. Clothilde Hewlett*
  Case No. 22STCV08163, L.A. County Superior Court .....................................6

*Prunty v. Bank of Am.*
  37 Cal. App. 3d 430 (1974) .............................................................................21

**STATUTES**
Cal. Bus. & Prof Code §17200 ...........................................................................1
Civ. Code § 1750 ................................................................................................1
Civ. Code § 1751 ..............................................................................................16
Civ. Code § 1760 ..............................................................................................16
Civ. Code § 1761(b) ..........................................................................................16
Civ. Code § 1770(a)(19) ...................................................................................16
Civ. Code § 1787.3 ...........................................................................................23
Civ. Code § 1801.4 ...........................................................................................21
Civ. Code § 1803.2 .....................................................................................20, 21
Civ. Code § 1803.2(a) .......................................................................................20
Civ. Code § 1803.3 ...........................................................................................21
Civ. Code § 3513 ..............................................................................................16
Cal. Fin. Code § 2200 .........................................................................................1
Cal. Fin. Code § 22054 ...............................................................................2, 8, 13
Cal. Fin. Code § 22100 .......................................................................................4
Cal. Fin. Code § 22750(a) ................................................................................18
Fed. R. Civ. P. 56(a) ...........................................................................................4

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

1    **I.    INTRODUCTION**

2    This case involves Plaintiff's purchase of consumer goods from a California merchant

3    that was financed by American First Finance ("AFF") unbeknownst to her. The crux of this case

4    is a factual determination of whether AFF is a direct lender in the transaction or whether the

5    merchant was the original creditor who thereafter sold the retail installment contract to AFF.

6    Case law requires a factual review of the "totality of the circumstances" to resolve this

7    issue.  Because resolution of this factual issue is a predicate question of material fact to AFF's

8    request for summary relief, AFF's motion should be denied in its entirety.

9    Plaintiff's Second Amended Complaint ("SAC") (ECF No. 162) asserts claims for

10    violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq*.;

11    violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §17200 *et seq.,* and

12    in the alternative for violations of the Unruh Act (Cal. Civ. Code §1801 *et seq*.). AFF moves for

13    summary judgment against some, but not all of these claims.  AFF does not make any

14    arguments against or provide evidence related to Plaintiff's CLRA claim for insertin an

15    unconscionable provision in a contract (Civ. Code §1770(a)(19), cited in SAC ¶67).  AFF also

16    did not move against the UCL claims stated in paragraphs 76(b) failing to disclose finance

17    terms, (c) concealing exorbitant and unconscionable finance rates, (d) failing to provide

18    consumers with a copy, (e) failing to notify consumers where to obtain loan and financing

19    information, and (i) failing to provide disclosures required by the Truth in Lending Act

20    ("TILA").  AFF has burden of introducing evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317,

21    323 (1986).   As such, AFF's motion does not trigger any requirement that Plaintiff submit

22    evidence to show material disputes of fact on these claims and they will remain in the case in

23    any event.

24    The three aspects of Plaintiff's UCL claim expressly addressed by AFF's motion, are

25    ¶¶76(a) unlicensed lending and (g) and (h) which are other violations of the California

26    Financing Law ("CFL"). Cal. Fin. Code §2200 *et seq.*; Def. Mot at 17-18.  By its motion, AFF

27    seeks to apply the exemption to the CFL which provides that, "This division does not apply to

28    bona fide conditional contracts of sale involving the disposition of personal property when these

-1-

forms of sales agreements are not used for the purpose of evading this division."  Cal. Fin. Code §22054; Def. Mot. at 18.  In support of its motion, AFF offers not a single case or other authority to explain how this Court is to determine when the forms of conditional sales contracts such as those used by AFF are being "used for the purpose of evading" the CFL.  Never mind that under the CFL, the financing offered by AFF to Plaintiff would have been capped at around 19%, instead of the 120% charged by AFF, rates that it continued to raise to 145% and then to 170%.  Green Decl., Exh. 7 at ¶¶136-142.[1]  Or the fact that AFF's own expert testified that competitive rates for deep subprime credit was 40% or below.  *Id.,* Exh. 9, App. C and Exh. 10 at 96:2-21.  AFF targeted the most vulnerable consumers with these excessive rates.  AFF targeted these consumers because they are frequently denied credit and are thus usually willing to take the first offer of credit they receive and do not engage in comparison shopping of different credit offers.  *Id.,* Exh. 7 at ¶¶122-126; Exh. 12 at 14:19-15:12 ("How do I sell 145 percent charge?" "[T]he subprime have not heard the word, 'yes,' in a long time in the State of California").  In fact, most of these consumers never knew they were paying 120% or 145% because AFF used a form of Docusign that scrolled past the disclosures and went right to the signature line. *Id.,* Exh. 18. And it has worked to put these consumers with poor credit in debt with over ███████ loans for ███████████, plus AFF's excessive interest.  *Id.*, Exh. 8.

Are AFF's rates excessive, or even unconscionable?  On this point, AFF offers no evidence at all.  The California Supreme Court explained in *De La Torre v. CashCall, Inc.,* 5 Cal.5th 966, 984 (2018), that an interest rate is unconscionable where "under the circumstances of the case, taking into account the bargaining process and prevailing market conditions – a particular rate was 'overly harsh,' 'unduly oppressive,' or 'so one-sided as to shock the conscience.'"  That is a question posed by this case – a question that AFF did not challenge in its motion for summary judgment.

Instead, AFF challenged the claims which assert that AFF was an unlicensed lender under the CFL.  AFF's challenge is based solely on its application of *Boerner v. Colwell Co.,* 21

---

[1] "Green Decl." refers to the Declaration of Robert S. Green in Support of Plaintiff's Opposition to Defendant's Partial Motion for Summary Judgment.

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

1    Cal.3d 37 (1978).  There are several problems with AFF's argument, however, the most obvious

2    of which is that in *Boerner,* the Court said that you have to determine the intent of the parties

3    and that "the requisite intent is always a question of fact."  *Id.* at 44.  As such, summary

4    judgment cannot be appropriate on those claims.  Moreover, the question of intent, according to

5    *Boerner,* was "to effect the hire of money at an excessive rate of interest. . . ."  *Id.* at 54.  The

6    *CashCall* case tells us that this determination involves all the circumstances of the case – again

7    not a proper subject for summary judgment where the rate charged was 120%, without full

8    disclosure.  The post-trial holding in *Boerner,* involving a few people negotiating interest rates

9    and contracts for construction of vacation homes, is simply not applicable to a case where

10   hundreds of thousands of vulnerable consumers are being charged excessive rates, and certainly

11   not at the summary judgment stage.  Moreover, there is evidence that none of the critical

12   information was disclosed to Plaintiff and she did not even know or believe that she was signing

13   a contract.  Green Decl., Exh. 1 at 103:20-105:5; 107:21-108:13; 114:3-15.  So, there is a

14   material dispute of fact as to whether the disclosure required by *Boerner* was made to Plaintiff

15   in this case and summary judgment should be denied on that basis alone.

16        Finally, AFF's motion addresses certain allegations of Plaintiff's CLRA claims, her

17   requested remedy of an injunction and her alternative claim under the Unruh Act.  Summary

18   judgment is also not viable on these claims because the failure to disclose AFF's role in the

19   transaction, the APRs and other material terms, among other things, constitute material

20   omissions in violation of the CLRA.  The Unruh Act claims are alleged in the alternative and

21   can only be analyzed after a trial of the claims related to AFF's illegal lending practices

22   described above.  Finally, AFF continues to report negative credit information on Plaintiff,

23   continues to maintain her liability under the illegal loan and seeks to repossess her property,

24   while also continuing to offer unlicensed loan products and to collect on illegal loans throughout

25   the State of California, thus justifying both private and public injunctions.

26        Plaintiff requests that AFF's motion for partial summary judgment be denied.

27

28

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

## II.    LEGAL STANDARDS

The Court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of presenting the basis of its motion and identifying those portions of the record it believes show, together with affidavits, the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to show with specific evidence, not mere conclusory allegations, the existence of a genuine issue of disputed material fact. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009). But in deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. For issues of state law, "[a]bsent controlling authority from the state supreme court, 'a federal court must 'predict how the highest state court would decide the [state law] issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" *Killgore v. SpecPro Pro. Servs., LLC*, 2022 U.S. App. LEXIS 29227, at *17 (9th Cir. Oct. 20, 2022) (quoting *Kaiser v. Cascade Cap., LLC,* 989 F.3d 1127, 1131-32 (9th Cir. 2021) (brackets in original).

## III.    ARGUMENT

### A.    AFF is not Entitled to Partial Summary Judgment on Andrade's CLRA and UCL Claims.

Certain of Plaintiff's claims are premised on the fact that AFF is in violation of Finance Code §22100, which provides that, "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner." AFF admits that it does not hold a license from the commissioner. Green Decl., Exh. 11 at 90:9-12; Exh. 7 at ¶44. AFF seeks summary judgment on these claims for the stated reason that its financing transactions constitute

00123698.000

credit sale transactions under the authority of *Boerner v. Colwell Co.,* 21 Cal.3d 37 (1978).[2]
AFF seeks to apply the exemption in Section 22054, which provides that, "This division does
not apply to bona fide conditional contracts of sale involving the disposition of personal
property when these forms of sales agreements are not used for the purpose of evading this
division."[3]  The exemption does not apply, however, because AFF's loans have all the indicia of
using the form of sales agreements for the purpose of evading the limits of the California
Finance Law ("CFL").  For example, lenders licensed under the CFL are subject to interest rate
caps.  Green Decl., Exh. 7 at ¶¶134-144; *see also id.*, Exh. 4. As a licensed lender, AFF would
be limited to charging Plaintiff 19.2% using the flat rate option, plus a fee of $50, rather than the
120% rate it imposed.  *Compare id.*, Exh. 7 at ¶137 *with* Exh. 3 (amount financed of 1201.62
with annual APR of 120%). This gap between the rates allowed by the CFL and those
increasingly charged by AFF grew significantly over time. *See id.,* Exh. 10 at 84:5-85:23.

AFF's motion relies on a single fact to support its motion for summary judgment on this
claim: "It is undisputed that Andrade's Security Agreement called for the provision of furniture,
which Andrade received. . . .  Thus the Security Agreement reflected a transfer of property
within the meaning of the credit-sale doctrine."  Def. Mot. at 13.  The argument made by AFF is
that its involvement in consumer transactions is similar to that of the lender, Colwell, in
*Boerner,* and, as such, its financing transactions cannot be considered to be loans.  AFF then
selectively quotes testimony from Plaintiff's expert out of context and omits critical language to
support its position.

AFF's reliance on *Boerner* is misplaced. *Boerner* requires a factual determination of
AFF's intent, which is not a proper subject of summary judgment. *Boerner* at 44 ("requisite
intent is always a question of fact.")  *Boerner* is a post-trial decision in which the Supreme

[2] AFF's motion states that it is directed against "claims under the CLRA and UCL that are
entirely premised on Andrade's argument that the Security Agreement is a loan."  Def. Mot at 8.
AFF, however, never indicates to which claims these arguments apply.  The sections of the
Second Amended Complaint ("SAC")(ECF No. 162), identified by AFF are ¶¶76(a), (g) and
(h), each of which relate to unlicensed lending and are in Plaintiff's Second Cause of Action for
violation of the UCL.  *See* Def. Mot. at 17-18.  Plaintiff accordingly addresses this section to the
arguments which appear to be directed to those specific violations of the UCL.
[3] The burden of proving that the exemption applies is on AFF, pursuant to Section 22053.

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

1    Court stated that, "the question of good faith has been examined by the trial court in light of the

2    evidence before it at trial and has been resolved in Colwell's favor." *Boerner* at 52.  The Court

3    further noted that, "We find no indication in the record before us that the parties' dealings were

4    other than in good faith, as the trial court found them to be." *Id.*  Based on these **factual**

5    determinations, the Court asked, "Does the mere participation by a nonexempt financing

6    institution in a transaction such as that before us – no matter how well-intentioned and no matter

7    how fully disclosed to the contracting parties" -- operate to change the character of the

8    transaction.  *Id.*  In other words, to reach the same result here as the Court did in *Boerner,* this

9    Court would have to make the factual findings that AFF's transaction was fully disclosed to

10    Plaintiff Andrade, that AFF "merely participated in the transaction and that its transactions were

11    "well-intentioned" within the policy contained in the CFL.

12         In *Boerner*, the Court stated the applicable test: "In all such cases the issue is whether or

13    not the bargain of the parties, assessed in light of all the circumstances and with a view to

14    substance rather than form has as its true object the hire of money at an excessive rate of

15    interest." *Id.* at 44.  Importantly for our purposes here, the Court unequivocally stated that, "the

16    existence of the requisite intent is always a question of fact." *Id.*  In a recent decision

17    interpreting *Boerner* in the context of a demurrer in a similar case, a California trial court

18    rejected application of *Boerner* because the Court in *Boerner* "examined the evidence on which

19    the trial court based its findings." *Opportunity Financial, LLC v. Clothilde Hewlett,* Case No.

20    22STCV08163, L.A. County Superior Court (slip op. September 30, 2022) (attached as Green

21    Decl., Exh. 6).

22              1.    **AFF's Transaction with Plaintiff Andrade was not Fully Disclosed**

23         In *Boerner*, the transactions related to the financing needed to build a vacation home

24    where the parties knew they were working with a lender.  By finding the transaction was fully

25    disclosed based on a trial record, the Court necessarily found that the borrowers were presented

26    with complete information about the financing and the interest rate.  Such is not the case here:

27    • Andrade thought that Elegant Furniture was the creditor (as would be expected for a

28      credit sale); Green Decl., Exh. 1 at 89:22-90:22;

-6-

- Andrade was not told the interest rate or the length of the loan; *id.* at 36:11-23, 47:19-25, 76:6-11, 93:19-95:1;

- Andrade was not shown the Security Agreement or any documents created by AFF in the transaction and did not receive a copy of the document at the time; *id.* at 63:23-64:15, 65:25-67:24, 69:14-71:5;

- Andrade was not told about the 120% interest rate; *id.* at 86:8-19;

- Andrade was asked to confirm that the information she had provided to the merchant, like her name and address, were correct, by clicking a mouse, but she was not shown the computer screen with the documents; *id.* at 103:20-105:15;

- Andrade did not believe she was signing a finance agreement and the financing terms were not explained; *id.* at 107:21-108:13, 114:3-15;

- Andrade's later experience in financing vehicles was that the financing agreement would be explained in detail, but she did not receive that here; *id.* at 88:5-9; and

- Andrade did not receive a copy of her AFF Security Agreement until she asked for it in September or October 2016 when she thought that her purchase amount had been fully paid; *id.* at 65:25-67:24, 69:14-71:5.

### 2.    AFF's Transactions Were Not Well-Intentioned

In *Boerner,* the lender  was approached by a builder to offer financing to people who could afford to build vacation homes and Colwell agreed to provide financing on a fully disclosed basis at slightly more than the usury limit as negotiated by the buyers entering into the agreements (*i.e.,* two transactions at issue charged between 11.6-12.5% APR).   *Boerner*, at 44, n.5.  In contrast, AFF's target market is vulnerable consumers with little or no credit.  Green Decl., Exh. 7 at ¶122 and Exh. 9 at ¶56 and n.58.

AFF used standardized contracts of adhesion, presented by retailers incentivized only to make a sale, not to explain financing terms, using an electronic system that was either not seen at all by the consumers, like Andrade, or which scrolled past the APR disclosures to the signature lines.  Green Decl., Exh. 18 and Exh. 7 at ¶¶73-74. This process is the opposite of the full disclosure provided in *Boerner* and has been held to be procedurally unconscionable under

-7-

California law.  *See Cabatit v. Sunnova Energy Corp.,* 60 Cal.App.5[th] 317, 323 (2020) (finding procedural unconscionability where "the agreement was presented on an electronic device and the salesperson scrolled through it, indicating where to initial and sign").

Unlike the 11 and 12% interest rates examined in *Boerner,* AFF's rates of 120% and greater are overly harsh and extreme.  Green Decl., Exh. 7 at ¶110. Plaintiff's expert stated that, "As consumer financial products go, particularly for a secured financing with a term of 18 months, these are all shockingly high and harsh annual percentage rates." *Id.; see also id.* Exh. 9 at ¶34.  In *De La Torre v. CashCall, Inc.,* 5 Cal.5[th] 966 (2018), the Court examined whether an interest rate of 90% and above on a loan over $2500 for which there were no preset caps at that time could be considered unconscionable. The Court answered that question "yes." *Id.* The Court also stated that, "unconscionability is a flexible standard in which the court looks not only at the complained-of term but also at the process by which the contractual parties arrived at the agreement and the larger context surrounding the contract, including its 'commercial setting, purpose, and effect.'"  *Id.* at 976. In *CashCall,* the Court held that the plaintiffs had stated a claim for relief for loans with an interest rate of 90% or higher, for a class of consumers similar to Plaintiff here, who were consumers with low credit scores living under financial stress.  *Id.* at 974.

In *Boerner,* the Court held that, "where the record clearly reveals that the substantial intent of the parties was to effect the hire of money at an excessive rate of interest rather than to finance a bona fide sale of property" is where usury laws are relevant in the context of transactions that purport to be credit sale financing.  *Boerner,* at 54.  In *CashCall,* the Court set the standard for determining what are not only "excessive" rates of interest, but those that are unconscionable.  When AFF's rates are considered in this context, it is clear that there are factual issues to be determined with regard to AFF's intent to effect the hire of money at an excessive rate of interest.  And there are material factual issues to be resolved with regard to whether AFF's transactions would qualify for exemption from the CFL for conditional sales contracts, only if "these forms of sales agreements are not used for the purpose of evading" the CFL.  *See* Finance Code §22054.  With regard to its intent and purpose of using these forms of

1  sales agreements to charge excessive rates of interest and to evade the strictures of the CFL,

2  AFF submitted no evidence at all.

3        Moreover, AFF is unable to offer any justification for its excessive rates along the lines

4  indicated in *CashCall* that might be used to support higher rates.  In discovery proceedings, AFF

5  reported that its President set its rates by looking at competitors' fliers and websites and that it

6  had no analysis of its cost of capital or other relevant data.  Green Decl. Exh. 5.  AFF's senior

7  management was unable to recall any calculations regarding the determination of the standard

8  APRs in its Security Agreements.  *Id.*

9        AFF's own expert testified that most of American First Finance customers in California

10  would be in the subprime or deep subprime credit categories, which include consumers with

11  credit scores of 619 and below. Green Decl., Exh. 10 at 92:12-93:3.  Based on data produced by

12  the Consumer Financial Protection Bureau, in 2017 the highest Total Cost of Credit for

13  unsecured private label credit cards was around 40% for deep subprime and about 32% for

14  subprime customers.  *Id.,*  Exh. 9, App. C and Exh. 10 at 86:2-107:13.

15        Nor is the context of AFF's transactions limited to a dozen people dealing with a single

16  builder as was the case in *Boerner.*  Here, Plaintiff's transaction was one of over ████ AFF

17  loans made through hundreds or thousands of retailers with an origination value of over ███

18  ████ – a materially different commercial context that justifies a higher level of scrutiny.

19  Green Decl., Exh. 8.

20        AFF's intent to evade the requirements of the CFL can further be inferred from its

21  knowledge of California law, the process it uses to bypass that law and its decision not to obtain

22  a lender's license under that law.  *See, e.g.,* Green Decl., Exh. 4.

23        **3.**      **Beyond *Boerner*: *Commissioner of Business Oversight v. Sezzle, Inc.***

24  *Commissioner of Business Oversight v. Sezzle, Inc.,* 2019 WL 8194406 (December 30,

25  2019)(*Sezzle*), lays out the position of the California Department of Business Oversight for

26  applying *Boerner* in cases similar to this case where the issue is whether the lender is required to

27  obtain a license under Section 22100 and whether its transactions are exempted from the CFL as

28  credit sales agreements "not used for the purpose of evading" the CFL.  "An agency

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

1    interpretation of a statute's meaning and legal effect is entitled to the courts' consideration and

2    respect." *CashCall,* at 987.[4]

3         *Sezzle* provides that under *Boerner,* extensive third-party involvement in underlying

4    credit sale transactions may cause the transactions to be deemed loans, regardless of the form,

5    and "*even if the underlying credit sale is bona fide.*" *Sezzle* at ¶¶28-29(emphasis in original).

6    Several factors identified there led the Commissioner to determine that Sezzle's extensive

7    involvement in the credit sale transactions exceeded that permitted in *Boerner*, and are

8    applicable here, as well.  The Commissioner noted that, "In addition to purportedly purchasing

9    merchants' credit sales contracts, Sezzle provides its merchants marketing services, payment

10   processing services, consumer dispute resolution services, and interest-bearing accounts in

11   which merchants can park the revenue from Sezzle." *Id.* at ¶38.

12        As in *Sezzle,* AFF requires merchants to enter into a merchant agreement with AFF in

13   which the consumers are not parties to the agreement.  Green Decl., Exh. 13 and Exh. 7 at ¶46.

14   Similarly, as in *Sezzle,* consumers using AFF financing are not fully informed of the role of AFF

15   or financing terms, as discussed with regard to Plaintiff, above.  AFF also provides its

16   merchants with extensive marketing services.  *Id.* at ¶54.  AFF provided marketing materials for

17   merchants to display in their stores.  *Id.,* Exh. 13 at Request 14. AFF's marketing included web

18   banners that could be used on merchant's websites to link directly to AFF to allow consumers to

19   access AFF's financing before ever entering a retailer's store.  *Id.,* Exh. 14 at 39:18-40:16.  AFF

20   included on its own websites, links to merchants, such that a consumer could put in a zip code

21   on AFF's website to find retailers that offered AFF financing.  *Id.* at 71:2-73:24.  AFF provides

22   advice to merchants about marketing AFF's program and participates in joint marketing

23   arrangements.  *Id.* at 92 and depo exh. 29, ¶8 (Steps for Success).  ▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.,* Exh. 12 at 19:1-

25   8.

26

27   _____

28   [4] AFF's recognition that *Sezzle* applies to its business model in California and that AFF intended to evade the requirements of the CFL are illustrated by the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Green Decl., Exh. 20.

00123698.000

1    In AFF's system, consumers can apply for credit, separate from a retailer, either through

2    a link on retailers' websites or by direct text message. *Id.* Green Decl., Exh. 7 at ¶¶54-55 and

3    Exh. 12 at 16:17-17:25. The system created by AFF, however, would advise consumers that

4    they were approved for an AFF loan, but do so without giving any terms, in particular the

5    extremely high APR that would be charged. *See id.*, Exh. 15. AFF also offered incentive

6    programs, such as ███████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████████████

8    ███████        *Id.,* Exh. 12 at 2:21-3:5. As AFF put it in a merchant training session, selling these

9    high interest loans to subprime borrowers ██████████████████████████████████

10   ███████████████████████████████████████████████████████████████████

11   ████████████████████        *Id.* at 6:21-25. In fact, AFF's target market included ██████████

12   ███████████████████████████████████        *Id.* at 15:10-12. The chances

13   of these people being able to complete a financing arrangement that added 145% interest is little

14   to none. They may get their car fixed at AAMCO, only to then have it repossessed the next day,

15   owing both the car payments and AFF, but AFF does not care. AFF, alone, controlled all terms

16   of the consumer financing. *Id.* at ¶¶67-68. Under AFF's structure, there is no point in time

17   where the consumer is actually obligated to the merchant. The concept of a transaction between

18   the merchant is total fiction. Indeed, the Security Agreement provides a Notice of Assignment

19   before the consumer and merchant actually sign the documents. *Id.* at ¶79.

20   Policy considerations do not otherwise justify exempting AFF's transactions from the

21   CFL. As in *Sezzle,* there are not countervailing policy considerations justifying the exemption

22   of AFF's products from the state's loan laws. *Sezzle* at ¶¶41-43. AFF's products are worse for

23   consumers than comparable, regulated options. For example, as set forth above, unsecured bank

24   credit cards for consumers with these credit scores were running interest rates at 40% and

25   below, while AFF is charging 120% and above. Unlike in *Boerner,* there is no direct indication

26   from the Legislature that AFF's underlying credit sales should be exempt from consumer

27   protection laws. And there is no evidence that AFF provides a unique financing alternative

28   whose absence from the market in its current form would imperil commerce generally.

-11-

00123698.000

In *Front Line Motor Cars v. Webb*, 35 Cal.App.5th 153 (2019), the court analyzed whether two contracts made in the context of used car sales were conditional sales contracts exempt from the statutory scheme involved there or were seller-assisted loans.  The court began its analysis with a discussion of the law that distinguishes between credit sales and loans, focusing specifically on *Boerner.*  After examining the majority and dissenting opinions in *Boerner,* the court concluded that, "in large part, policy considerations and the realities of industry practice underlie the distinction between credit sales and loans." *Id.* at 166.  The court noted that the act in question in that case, like the CFL, "was directed at protecting the unwary, unsophisticated consumers against such evils as excessive interest charges; lack of full disclosures to the buyer;" and related concerns in the used auto sale context. *Id.* at 167-168 (quoting *Kunert v. Mission Financial Services Corp.,* 110 Cal.App.4th 242, 257-258 (2003)). These same policy concerns, that were not present in *Boerner,* are presented in this case where AFF's loan program was directed at unwary, unsophisticated consumers, using excessive interest charges and lack of full disclosure to the buyers.  AFF's failure to offer any evidence on these policy considerations, by itself, dooms its motion for summary judgment and, even if it had done so, the contrary evidence offered by Plaintiff would establish a question of fact for trial.

**4.    AFF's Attempts to Revise the Testimony of Plaintiff's Expert, Adam Levitin, are Disingenuous and do not Support Summary Judgment.**

AFF's approach to summary judgment is premised on its attempt to break the transactions with Plaintiff and other consumers into two components – the underlying Retail Installment Sales Agreement (RISA)[5] and the assignment – both of which, it argues, are fine on a stand-alone basis.  The problem is that *Boerner* makes clear it is a totality of the circumstances test to be "assessed in light of all the circumstances and with a view to substance rather than form." *Boerner* at 44.  AFF's argument turns *Boerner* on its head by claiming that the merchant had a valid RISA and that the merchant made a valid assignment, therefore the transaction

---

[5] The loan agreement is titled "Security Agreement" also referred to as a Retail Installment Sales Agreement (RISA) and a Retail Installment Sales Contract (RISC), interchangeably.

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

1    cannot be deemed a loan. AFF's argument places the form of these two components of the

2    transaction above the substance of the entire transaction. For this reason alone, AFF's argument

3    does not address the test set forth in *Boerner* and as such cannot meet AFF's burden on its

4    motion for summary judgment. Moreover, the exemption to the CFL, by its clear terms, does

5    not apply to even "bona fide conditional contracts of sale" when these forms of sales agreements

6    are used for the purpose of evading the CFL. Finance Code §22054. Under this provision,

7    where the purpose of the transaction is to evade the CFL, the exemption does not apply, leaving

8    AFF as an unlicensed lender.

9         Plaintiff's expert, Professor Adam Levitin, opined that, "[b]ased on [his] review of the

10   discovery record in this case and [his] existing knowledge about the custom and practices of the

11   consumer finance industry, it is [his] opinion that AFF's provision of financing bears the indicia

12   of being a direct loan to consumers, rather than the assignment of a RISC." Green Decl., Exh. 7

13   at ¶28. He goes on to opine that, "AFF's financing went beyond what was necessary to

14   effectuate a mere assignment of the Plaintiff Class's RISC's." *Id.* His expert report then details

15   "all the circumstances" as required by *Boerner* that led him to those opinions with extensive

16   citations to the record. *Id.*[6]

17        In order to support its false assertion that Levitin agreed that the underlying transaction

18   constituted a valid RISC and that his opinion was based solely on the fact that there was an

19   assignment of that RISC, AFF mischaracterized Levitin's deposition testimony by quoting clips

20   of it without other surrounding testimony that clarifies and in some instances, putting an ellipsis

21   in the middle of a quote in place of the critical testimony. For example, to support its false

22   assertion that Levitin's opinion is based solely on the existence of the assignment, AFF quotes

23   the following testimony:

24             This whole case arises because of the assignment of these retail
               installment sales contracts . . . . It might well be that these are
25

26   ─────────────────────
     [6] AFF's motion incorrectly suggests that the only support for Plaintiff's claims in the record is
27   Mr. Levitin's report. That is incorrect. As set forth above, there is substantial evidence
     supporting these claims, separate from, and in addition to the expert report. Moreover, to the
28   extent that Plaintiff cites to the expert report in this brief, it is intended to include the citations to
     the record that are included in that report, as well as Mr. Levitin's stated opinions.

-13-

00123698.000

1          perfectly compliant [RISCs] if not assigned, but when assigned . . .
2          that is what makes it clear that . . . these are not really [RISCs] but
           are disguised loans by AFF.

3    Def. Mot. at 16.   The version of this testimony with language AFF omitted in bold and

4    underline is as follows:

5          This whole case arises because of the assignment of these retail
           installment sales contracts . . . . It might well be that these are
6          perfectly compliant [RISCs] if not assigned, but when assigned **in**
           **the circumstances that exist here, the totality of those**
7          **circumstances,** that is what makes it clear that . . . these are not
           really [RISCs] but are disguised loans by AFF.

9    Green Decl., Exh. 19 at Vol. 1, 53:17-54:4.

10        Therein lies the crux of AFF's motion, its claim to a valid RISC and a valid assignment,

11   while ignoring the totality of the circumstances and how they show that AFF created a massive

12   program to saddle vulnerable consumers with excessive interest rate contracts, without

13   providing adequate disclosures and without even the scintilla of risk by the merchants in the

14   RISCs created by AFF.  In other testimony that AFF ignores, Levitin made his position clear.

15   When asked, "And the reason why you think it's a loan dressed up as a retail installment

16   contract is because Elegant Furniture assigned it to AFF?", Levitin answered, "Not because of

17   the assignment by itself, no. I thought I made that clear earlier this morning."  Green Decl., Exh.

18   19 at Vol. 1, 159:17-21; *see also id.* at Vol. 1, 38:7-15; 58:17-59:2; Vol. 2, 30:13-31:19; 99:3-

19   100:1; 100:20-101:12; and 159:2-160:4.

20        AFF's attempt to massage Levitin's testimony into an "admission" that the contract AFF

21   created with Elegant Furniture's name as the seller constituted a bona fide RISC is similarly

22   misguided.  Def. Mot. at 16.  AFF relies on a quotation from Levitin's testimony at Vol 2,

23   112:1-10 to make this point, but leaves out the next two questions and answers, where Levitin

24   makes clear that, "it's not the assignment per se.  It's the entire background of this . . . that was

25   built from the ground up for the purpose [of] . . . assignment to AFF, such that the merchant

26   would never have any material involvement in the financing."  Green Decl., Exh. 19 at Vol. 2,

27   112:11-113:11.  Levitin testified clearly that creating a form with the appearance of a valid

28

-14-

00123698.000

1   RISC by itself does not change the totality of circumstances, which establish that the transaction

2   was a loan by AFF:

> Q. So, AFF's involvement in the process converts what would otherwise be an
>    enforceable retail installment sales contract into a loan, in your opinion?
>
> A. I think that would be an accurate statement.  I would phrase it differently, though.  I
>    would say that AFF is using the guise of a retail installment sales contract to mask a
>    transaction that, from the get-go has always been a loan and they just dress it up in
>    the clothing of a retail installment sales contract.  So, it's not that there was a
>    legitimate retail installment sales contract and it somehow magically
>    transubstantiated.  It's that there never was a legitimate retail installment sales
>    contract.  It was a loan from the beginning and the loan has been masked as a retail
>    installment sales contract in an attempt to avoid California's usury laws.

10  Green Decl., Exh. 19 at Vol. 1, 160:16-161:10; *see also id.,* Vol 1, 53:17-54:4.

11      AFF also disingenuously relies on this Court's determination in a related case that there

12  was a valid assignment.  Def. Mot. at 17.  This argument flies in the face of the language from

13  *Boerner* that AFF quotes on the prior page:  "the fact of assignment *in and of itself* has no

14  significant effect on the characterization of the transaction according to its substance . . . ."  Def.

15  Mot. at 16 (quoting *Boerner* at 50).  It is thus irresponsible of AFF to then argue that an order

16  finding that a contract was assigned in and of itself determines that the Security Agreement was

17  a credit sale agreement, not a loan.  This is particularly true given that the standard on which

18  AFF obtained that ruling in *Facio v. AFF* is that an "assignment requires very little by way of

19  formalities and is essentially free from substantive restrictions."  Def. Mot. at 14.

20      Plaintiff disputes that there was a valid RISA between her and Elegant Furniture.

21  Indeed, she did not even know that the mouse click she was instructed to make was to enter into

22  an agreement.  Green Decl., Exh. 1 at 103:20-105:15.  And without a valid RISA, there could

23  not be a valid assignment from Elegant Furniture to AFF.  On this point, there is a dispute of

24  facts with contradicting evidence that precludes summary judgment.  More importantly,  these

25  facts are but part of the totality of circumstances that preclude a finding that AFF's conduct was

26  well-intentioned and fully disclosed in the manner that the vacation home contracts in *Boerner*

27  were found to be after a trial.

28

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

1

### B.    Plaintiff Has Alleged a Viable Claim Under the CLRA.

2     AFF does not move against Plaintiff's claim under Civil Code §1770(a)(19), for

3  "[i]nserting an unconscionable provision in the contract," so that claim will remain in the case in

4  any event.

5     AFF argues that Andrade has failed to allege any representations that violate the other

6  subsections of the CLRA identified in the SAC.  But the evidence cited above demonstrates that

7  AFF controlled the entire transaction and concealed from Plaintiff the nature of the transaction,

8  the terms of the loan, the APR and, in fact, all of the material terms of the transaction.  AFF

9  argues that Plaintiff has "neither alleged nor presented any evidence to suggest that any

10  misrepresentations were made regarding the furniture itself."  Def. Mot. at 21.  But, AFF

11  ignores Plaintiff's claims of misrepresentation about the "services" provided by AFF, nor does it

12  dispute that it provided services to Plaintiff.

13     Plaintiff's CLRA claim is grounded on the allegation that Ms. Andrade was purchasing

14  services in addition to the furniture.  Paragraph 64 of the Second Amended Complaint alleges

15  that AFF was engaged in the sale of services as part of the transaction with Ms. Andrade in this

16  case.  And in connection with the sale of services, the SAC alleges that AFF engaged in acts of

17  misrepresentation and concealment. SAC, ¶¶19-24, 31-55, 62-67.

18     The CLRA prohibits twenty-four types of misrepresentations in consumer contracts.

19  The Act is to be liberally construed. Civil Code § 1760 and its provisions may not be waived.

20  *Id*., § 1751; Civ. Code § 3513 (waiver prohibited for any provisions of an Act intended for a

21  public purpose). The term "services" used in the CLRA is expressly broad. It constitutes "work,

22  labor, and services other than a commercial or business use, . . . "  Civ. Code §1761(b). The

23  term "services" is defined by Webster's Dictionary to mean "helpful acts" or useful labor that

24  does not produce a tangible commodity." The SAC alleges that AFF provided services in

25  connection with the sale of furniture to Plaintiff, namely loan funds and the intangible services

26  to her in connection with the loan. SAC ¶¶41-44, 63-65 (Dkt. 162).

27     These allegations meet the definition of "service" in the CLRA. The use of the term

28  "'including' indicates exactly that - inclusiveness - rather than an exhaustive list." *Jefferson v.*

-16-

00123698.000

1  *Chase Home Fin., LLC,* 2007 U.S. Dist. LEXIS 36298, *3 (N.D. Cal. May 3, 2007). Thus, cases

2  have applied the CLRA to services related to intangible goods, such as retirement accounts and

3  estate and financial planning services. *See e.g., Kagan v. Gibraltar Sav. & Loan Ass'n.*, 35

4  Cal.3d 582, 596-97 (1984), *disapproved on other grounds Meyer v. Spectrum LP* 45 Cal.4th

5  634, 643 (2009)(applying the CLRA to management fees in connection with retirement

6  accounts); *Estate of Migliaccio v. Midland Nat'l Life. Ins. Co*., 436 F.Supp.2d 1095, 1109 (C.D.

7  Cal. 2006) (denying motion to dismiss CLRA claim based on estate and financial planning

8  services).

9      Numerous courts have held that discrete services in connection with a "good" or

10  "service" are covered by the CLRA. For example, in *Poghosyan v. First Fin. Asset Mgmt,* 2020

11  U.S. Dist. LEXIS 14137 (E.D. Cal. Jan. 27, 2020), the district court, seeking to determine how

12  the California Supreme Court would rule, concluded that "debt collection – especially of debt

13  related to a good or service – falls under the purview of the CLRA." *Id.* at *8. The court

14  concluded that the collection of debt, which the plaintiff incurred in connection with a car rental,

15  is distinguishable from insurance and credit cards, which the California Supreme Court has held

16  are not covered by the CLRA, citing *Fairbanks v. Superior Court,* 46 Cal.4th 56 (2009), in

17  which the Court considered whether life insurance was covered by the Act.

18      The *Poghosyan* court also considered and rejected the defendant's reliance in that case

19  on *Alborzian v. JPMorgan Chase Bank, N.A*., 235 Cal.App.4th 29 (2015), a case AFF relies on

20  here.  *Poghasyan*, *supra* at *25 n. 1. *Alborzian* held that debt collection concerning a mortgage

21  loan was not covered by the CLRA because it was neither a "good" nor a "service." It held that

22  mortgage lenders should be treated the same as those selling insurance based on the reasoning of

23  *Fairbanks.* But the Court in *Fairbanks,* limited its holding to the express exclusion of the term

24  "insurance" from the CLRA.

25      AFF's motion incorrectly focuses on affirmative misrepresentations and the reliance

26  element related thereto.  Def. Mot. at 20 (referring to "false representation," "reliance on

27  misrepresentation," "representations made in violation of those sections of the CLRA").  AFF

28  does not address any alleged concealments or omissions and on that ground its motion for

-17-

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

1    summary judgment on the CLRA claim fails.  As the Complaint alleges and the evidence above

2    demonstrates, AFF did not disclose to Plaintiff any of the terms of the transaction.  A failure to

3    disclose a fact constitutes a deceptive practice actionable under the CLRA when the defendant

4    has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff

5    and when defendant actively conceals a material fact.  *Gutierrez v. Carmax Auto Superstores*

6    *California,* 19 Cal.App.5th 1234, 1258 (2018).  Both of these situations are in play here where

7    Plaintiff was not provided with the Security Agreement, the APR or any of its terms.  Moreover,

8    materiality of omissions is usually a question of fact.  *Id.* at 1262.  In this context, reliance is

9    presumed.  *Corson v. Toyota Motor Sales, U.S.A., Inc.,* 2013 U.S. Dist. LEXIS 189262 at *15

10   (C.D. Cal. July 18, 2013)(collecting cases); see also *Massachusetts Mutual Life Ins. Co., v. Sup.*

11   *Ct.,* 97 Cal.App.4th 1282, 1287-88 (an inference of reliance arises if a material false

12   representation was made to persons whose acts thereafter were consistent with reliance upon the

13   representation).

14           Moreover, every act committed by AFF in the context of servicing Plaintiff's loan and

15   trying to collect thereon where the loan was rendered wholly or partially void or uncollectible

16   under state-licensing and usury laws, constitutes deceptive conduct in violation of the CLRA.

17   *See, e.g., Consumer Fin. Prot. Bureau v. CashCall, Inc.,* 2016 U.S. Dist. LEXIS 130584 (C.D.

18   Cal. Aug. 31, 2016); *see also* Fin. Code CA Fin Code § 22750(a)("If any amount other than, or

19   in excess of, the charges permitted by this division is willfully charged, contracted for, or

20   received, the contract of loan is void, and no person has any right to collect or receive any

21   principal, charges or recompense in connection with the transaction." And (b) same for

22   unlicensed transactions).  Each of the representations made by AFF in this context constitutes

23   misrepresentations of the "approval or certification" of its acts [subsection (a)(2)],

24   misrepresentation of the certification by another [subsection (a)(3)], representations that the

25   services have approval and characteristics that they did not have [subsection (a)(5)], and

26   representations that the transaction involved rights, remedies or obligations that it does not have

27   or involve or that are prohibited by law [subsection (a)(14)].  The omission at the time of the

28   original transaction of a clear statement that AFF was providing the loan similarly violated these

-18-

1    subsections, as did the failure to disclose that the transaction was an illegal loan from the

2    beginning.

3         Plaintiff's CLRA claims present questions of fact not subject to summary adjudication.

4    Further, AFF argues for summary judgment regarding claims about the furniture and wholly

5    fails to address Plaintiff's claims that AFF misrepresented the services to be provided in

6    connection with the loan, which must be determined as a question for the trier of fact. Therefore,

7    AFF's motion for summary judgment on this basis should be denied.

8         **C.    AFF is not Entitled to Summary Judgment on the Unruh Claim**

9         The question is not whether the RISA is subject to the Unruh Act, as AFF argues, but

10   whether AFF is a lender or an assignee of the RISA, which is a question of material fact.  Only

11   if AFF is determined to be an assignee of the RISA, does Plaintiff's Unruh claim in the

12   alternative come into play. In other words, a predicate question to AFF's partial summary

13   judgment motion on the Unruh Act is itself a question of fact.  Therefore, AFF's summary

14   motion as to the Unruh Act claim should be denied. However, Plaintiff addresses AFF's

15   argument for partial summary adjudication below.

16        Contrary to AFF's assertion, whether the RISAs are governed by the Unruh Act is

17   disputed.  AFF falsely asserts that the parties do not dispute that the RISAs are governed by the

18   Unruh Act by misquoting Professor Levitin's deposition testimony. Def. Mot. at 18:15-19.  The

19   Complaint speaks for itself. Plaintiff asserts the transaction is a loan not subject to the Unruh

20   Act, and only asserts the Unruh Act claim in the alternative. Def. Mot. at 1:7-9.  In fact,

21   Professor Levitin opines that only a true assignee of a RISC, as opposed to a direct lender, is not

22   subject to the licensing and usury caps that apply to California finance lenders. It is the **status** of

23   AFF that renders the RISA subject to the CFL or Unruh, not the document itself. The full

24   context of Professor Levitin's testimony states that the reason AFF would want to claim it is an

25   assignee of the RISCs rather than a direct lender is to avoid a usury cap.

26        **The reason that ... a business like AFF would want to claim that it is**
     **actually an assignee of Retail Installment Sales Contracts rather than a**

27   **direct lender, ... that it's just an assignee of Retail Installment Sales**
     **Contracts is that** if it's just an assignee of Retail Installment Sales Contracts,

28

00123698.000

it's not going to be subject to the licensing and usury caps that apply to California finance lenders. Instead, the transaction would be governed by the Unruh Act[.]

Narita Decl., ¶ 3, Ex. B [Levitin Dep., Vol. 2, at 95:22–97:8] (bolded text was eliminated from AFF's quoted section).[7]  In this same section, Professor Levitin further clarified, "if you don't want to be subject to a usury cap, one thing you might do is pretend that what you're doing is actually a -- an assignment of a Retail Installment Sales Contract."  Narita Decl., ¶ 3, Ex. B [Levitin Dep., Vol. 2, at 96:24-97:3].

AFF violated the single document rule (Civ. Code §1803.2(a)).  The Unruh Act's single document rule states that "Except as provided in Section 1808.3 [inapplicable here], every retail installment contract shall be contained in a single document that shall contain: (a) The entire agreement of the parties with respect to the cost and terms of payment for the goods and services, including any promissory notes or any other evidence of indebtedness between the parties relating to the transaction."  Cal. Civ. Code § 1803.2.

AFF argues that it did not violate the single document rule because the Bill of Sale was incorporated into the RISA, in itself an admission that there were two separate documents reflecting the terms of sale. Def. Mot. at 19:8-12. AFF's argument, however, is premised on Andrade actually receiving both documents. But AFF has not provided any evidence that Plaintiff received anything other than the Bill of Sale describing the goods purchased, but not the financing terms.  Andrade does not dispute that she received the Bill of Sale. Her testimony has been consistent that she did not receive the RISA.  Green Decl, Exh. 1 at 44:7-45:25; 65:13-66:10; 70:7-71:5; Exh. 2; Exh. 16 at ¶¶6, 10.  AFF had not asserted otherwise. Further, AFF's own evidence shows that the email address that the RISA was allegedly sent to was not Andrade's. *Id.,* Exh. 17 (email address: 1miketru@gmail.com); Exh. 1 at 13:16-25; 44:7-45-7. AFF does not dispute this fact.

---

[7] "Narita Decl." refers to the Declaration of Tomio Narita in Support of Defendant's Partial Motion for Summary Judgment (ECF No. 316-1).

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000

In *Morgan v. Reasor Corp.* (1968) 69 Cal. 2d 881, the court held that Unruh's single document rule was violated where the contract and note were not physically attached to one another as required under Civ. Code §1803.2.  *Id*. at 889 (overruled on other grounds in *Prunty v. Bank of Am.* (1974) 37 Cal. App. 3d 430, 443 and replaced by Civ. Code 1801.4 (both excluding home construction contracts from application of Unruh); (factually distinguished by *Boerner*).  The *Morgan* court held that only strict compliance with the single document rule would give finance companies incentive to "effectively to police against Unruh Act violations." *Id*. at 890.

"The Unruh Act represents a constructive effort by the Legislature to protect consumers in the State of California in the all-important area of installment contracts. In interpreting the act we must seek the achievement of the legislative purpose of according to consumers who are parties to such contracts the full protection of the salutary statute."  *Morgan, supra* at 897-98.

The true terms of sale were not disclosed to Plaintiff at the time of sale.  AFF seeks summary adjudication on Plaintiff's claims that it failed to disclose terms of sale on bill of sale, misrepresented the terms of sale on the RISC, and failed to include a description of the goods sufficient to identify them on the RISC, in violation of Civ. Code §1803.3. Def. Mot. 18:24-19:1. As argued above, Plaintiff did not receive a copy of the RISA at the time of sale and thus the terms of sale, including the details of financing, the 120% interest rate, and the fact that the contract was purportedly assigned to American First Finance, were not disclosed to her thus preventing her from making an informed decision at the time of sale.

AFF argues that fully integrating a Bill of Sale into a RISA is consistent with industry norms. Def. Mot. at 19:14-19. However, this argument has no merit when the consumer is not provided with all of the integrated documents at the time of sale.  Andrade did not and thus the integration clause failed to provide her with the protections intended by the Act – that of full disclosure of all terms of sale.  "The Unruh Act deals with a variety of abuses in the making and enforcement of retail contracts—alterations in contracts, excessive financing charges, unfair garnishment and repossession, etc." *Morgan, supra* at 889.

-21-

In light of the above questions of material fact, the legislative purpose of Unruh, and the requirement for a court to review a summary motion in the light most favorable to the non-moving party, AFF's motion should be denied.

### D.    Andrade has Constitutional Standing to Seek and Obtain a Permanent Injunction.

AFF contends that Ms. Andrade lacks Article III standing to seek injunctive relief. Def. Mot. at 2-8.  It argues that she has failed to show any threat of future action against her and that she lacks any particularized, concrete harm.  *Id*.

First, Andrade's relationship with AFF demonstrates that AFF has taken past and current action to report her credit history as negative with major credit bureaus. Green Decl., Exh. 21 (Andrade Declaration), ¶¶3-4. Since she failed to make a monthly payment on her loan with AFF, it has reported her account as negative with the major credit bureaus.  *Id*. As a result, she has been denied credit since she made the furniture purchase with Elegant Furniture in 2015. The negative credit information remains on her report. *Id*. ¶4.

These are concrete, particularized harms which satisfy the requirements of Article III. In *Spokeo v. Robins*, 578 U.S. 330 (2016), the Court addressed whether a willful violation of the Fair Credit Reporting Act ("FCRA"), absent proof of actual damages, constituted sufficient harm to confer Article III standing to a FCRA plaintiff.  The Court ultimately declined to resolve the question, instead remanding the case back to the Ninth Circuit to consider whether the *Spokeo* plaintiff's injuries were sufficiently "concrete" to confer Article III standing.  In so doing, the Court advised that a statutory cause of action does not automatically empower courts to resolve alleged violations of the statute; rather, Article III requires that the statutory violation must cause the plaintiff to suffer harm that "actually exist[s]" and is not merely "abstract" or "procedural."  578 U.S. at 340.

On remand, the Ninth Circuit distilled the Court's discussion of Article III's concrete harm requirement in *Spokeo* as requiring a two-step inquiry:

- (1) Were the statutory provisions at issue established to protect the plaintiff's concrete (as opposed to procedural) rights? And

-22-

- (2) Did the specific procedural violations alleged in the case actually harm, or present a material risk of harm, to those interests?

*Robins v. Spokeo*, 867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 931(2018)

The Court answered both issues in the affirmative.  Surveying the FCRA's legislative history, the court concluded that the interests the FCRA were intended to protect—namely, to protect consumers from the dissemination of false information regarding their credit ratings— were concrete in nature. *Robins v. Spokeo*, 867 F.3d at 1113. (Op. at 10-15).  Second, the Ninth Circuit held that the *Spokeo II* plaintiff Robins alleged FCRA violations that presented a legitimate and material risk of actual harm to him. *Id*.  In the instant case Plaintiff has alleged concrete and particularized harm to her from AFF's reporting if negative credit information about her loan. SAC ¶¶48-51 (Dkt. 162).  The allegations are not speculative; she has already been denied credit as a result of AFF's actions. Green Decl., Exh. 21.

Negative credit information has been held to justify injunctive relief where a plaintiff is able to prove liability under a statute or claim providing for such relief. For example, under California's analogue to the FCRA, Civil Code § 1787.3, reporting adverse negative credit information may subject a furnisher like AFF to an injunction among other remedies. Civil Code § 1787.3. And California's FCRA provides that nothing in the Act prohibits or forecloses remedies under state statutes. Thus, Plaintiff is also entitled to seek and obtain injunctive relief against AFF under both the CLRA and the UCL for both private and public.

Second, AFF has continued to threaten Ms. Andrade with repossession of the furniture she purchased at Elegant Furniture. Green Decl., Exh. 21, ¶5. This continued threat subjects Plaintiff to the risk of real harm. That threat entitles her to obtain injunctive relief both private and public.

Ultimately, AFF continues to act as an unlicensed lender in California and continues to collect on illegal debts in California – conduct that affects Plaintiff, other existing customers of AFF and everyone who might be offered an illegal loan in the future.  This forms a valid basis to seek both a private injunction and a public injunction.

00123698.000

1   **IV.    CONCLUSION**

2        For the foregoing reasons, AFF's motion should be denied in its entirety.

3   DATED:  November 7, 2022                    **GREEN & NOBLIN, P.C.**

4

5                                        By:    _/s/ Robert S. Green_
                                               Robert S. Green

6

7                                        James Robert Noblin
                                         Emrah M. Sumer
8                                        2200 Larkspur Landing Circle, Suite 101
                                         Larkspur, CA  94939
9                                        Telephone:  (415) 477-6700
                                         Facsimile:  (415) 477-6710
10                                       Email:  gnecf@classcounsel.com

11                                       Alicia Hinton (State Bar No. 292849)
                                         **LAW OFFICE OF A.L. HINTON**
12                                       1616 W. Shaw Ave., Suite B7
                                         Fresno, CA 93711
13                                       Telephone:  (559) 691-6900
                                         Facsimile:  (559) 421-0373
14                                       Email:  alicia@alhintonlaw.com

15

16                                       James C. Sturdevant (SBN 94551)
                                         **THE STURDEVANT LAW FIRM, APC**
17                                       P. O. Box 151560
                                         San Rafael, CA 94915
18                                       Telephone:   (415) 477-2410
                                         Facsimile:  (415) 492-2810
19                                       Email: jsturdevant@sturdevantlaw.com

20                                       Attorneys for Plaintiff
                                         MARIA ANDRADE
21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION AND PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-cv-06743-SK

00123698.000