United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA ANDRADE,

Plaintiff,

v.

AMERICAN FIRST FINANCE, INC., et al.,

Defendants.

Case No. 18-cv-06743-SK

**ORDER REGARDING MOTION FOR NEW TRIAL**

Regarding Docket No. 462

This matter comes before the Court upon consideration of the motion for a new trial filed by Plaintiff Maria Andrade ("Plaintiff"). The Court finds the motion suitable for disposition without oral argument and, thus, VACATES the hearing scheduled for July 10, 2023. *See* N.D. Civ. L.R. 7-1(b). HAVING carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court DENIES Plaintiff's motion for the reasons set forth below.

Defendant objected to the Declaration of Robert S. Green. However, in her reply brief, Plaintiff withdrew Green's Declaration. (Dkt. No. 466 at p. 9 n. 3.) Therefore, the Court need not rule on Defendant's objection, as it is moot.

**BACKGROUND**

The Court filed its intended jury instructions on March 27, 2023. (Dkt. No. 407.) The Court filed amended intended jury instructions on April 4, 2023. (Dkt. Nos. 420, 421.) On April 14, 2023, the Court filed its intended final instructions that it read to the jury. (Dkt. No. 434.) Plaintiff did not object to the Court's intended instructions regarding the California Consumer Legal Remedies Act ("CLRA").

The Court also filed its intended verdict forms on April 14, 2023. (Dkt. Nos. 436, 437.) Again, Plaintiff did not object to the questions on the verdict form regarding the CLRA. The parties finished presenting their cases, and the Court instructed the jury on April 19, 2023.

United States District Court
Northern District of California

Plaintiff now moves for a new trial on the following four grounds: (1) once the jury found that the Security Agreement was not a loan, the jury instructions and verdict form precluded the jury from determining whether Defendant American First Finance, Inc. ("Defendant") used the Security Agreement and its assignment for the purpose of evading the California Finance Law; (2) the jury's determination that the Security Agreement was not a loan was against the great weight of the evidence; (3) Plaintiff was prejudiced by the Court's exclusion of her proof of the return receipt ("green card") from the United States Postal Service; and (4) Plaintiff was prejudiced by the Court's exclusion of Plaintiff's expert report and testimony regarding loans versus retail sales installment contracts.

**ANALYSIS**

Federal Rule of Civil Procedure 59 provides that a motion for new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" *See* Fed. R. Civ. Proc. 59(a)(1). The Ninth Circuit has "held that '[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)).

However, Plaintiff did not raise any objection to the jury instruction or verdict form on the grounds she now asserts. "By waiting until post-trial motions to raise its specific contentions, [Plaintiff] prevented the Court from correcting any problems *ex ante*." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1110 (9th Cir. 2001). Because Plaintiff waived her objections by failing to raise them earlier, she must demonstrate "plain error" on her motion for new trial. *Id*. at 1109; *see also Ayuyu v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir. 2002).

"The policy behind plain error review is to ensure that the parties and district court are on notice as to any alleged errors so that the court may address the objection, correct any error, and create a proper record for appeal." *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir. 2019). To demonstrate plain error, Plaintiff must "show that: (1) there was error; (2) the error was plain; (3) the error affected that party's substantial rights; and (4) the error seriously affected the fairness,

integrity, or public reputation of judicial proceedings. *Bearchild v. Cobban*, 947 F.3d 1130, 1139 (9th Cir. 2020). "An instructional error is plain if it was 'sufficiently clear at the time of trial that the district court's . . . instruction was impermissible.'" *Id.* (quoting *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018)); *see also C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (finding "plain error standard of review in the civil context is similar to, but stricter than, the plain error standard of review applied in criminal cases.").

With respect to sufficiency of the evidence, if a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) was not made in Court, then a party may move for a new trial only "if there is "plain error apparent on the face of the record that, if unnoticed, would result in a manifest miscarriage of justice." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001) (internal quotation marks and citations omitted). However, as the Ninth Circuit has made clear, there is no plain error under this "extraordinarily deferential review" if "there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Id.* (emphasis in original) (finding "no plain error, given the extraordinarily deferential standard of review, because plaintiffs introduced evidence to support the jury's verdict").

**A. Intent to Evade the California Finance Code.**

Plaintiff argues that, once the jury determined that the Security Agreement was not a loan, the structure of the jury instructions and special verdict form precluded the jury from determining whether Defendant created the Security Agreement to evade the requirements of the California Finance Code. As discussed above, because Plaintiff failed to object to the Court's intended instructions or verdict forms on this issue before they were provided to the jury, Plaintiff must demonstrate that any error was plain error. In her motion, Plaintiff completely fails to discuss or even point to the evidence which could support a jury finding of Defendant's intent to evade the Finance Law. Instead, Plaintiff relies entirely on the fact that the jury was not given an opportunity to make this determination. In the absence of any evidence to support a finding by the jury regarding Defendant's intent, any error in the instructions or verdict form would not be prejudicial. *United States v. Pelisamen*, 641 F.3d 399, 405 (9th Cir. 2011) (whether a purported error affected substantial rights, "in most cases is an inquiry into whether it was "prejudicial" –

that is, whether it 'affected the outcome of the [trial] court proceedings.'") (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *see also K.J.P. v. Cnty. of San Diego*, 621 F. Supp. 3d 1097, 1134 (S.D. Cal. 2022) ("a new trial cannot be granted absent a showing by the moving party of prejudice sufficient to convince the court that a new trial would likely produce a different outcome."). Therefore, the Court finds that Plaintiff fails to demonstrate plain error on this ground.

**B. Jury's Determination that the Security Agreement was not a Loan.**

Plaintiff argues that the jury's determination that the Security Agreement was not a loan was against the great weight of the evidence. However, as discussed above, because Plaintiff failed to more for judgment as a matter of law on this ground, she needs to demonstrate that there was a manifest miscarriage of justice. *Yeti by Molly*, 259 F.3d at 1109. Moreover, if there was *any* evidence to support the jury's finding, then Plaintiff's motion fails, regardless of the sufficiency of such argument. *Id*. Plaintiff argues that the only evidence to support the jury's finding was the language and form of the Security Agreement itself, but that is *some* evidence. Therefore, the Court finds that Plaintiff fails to demonstrate plain error on this ground.

**C. Evidence that Notice Was Sent with Return Receipt.**

The CLRA requires that a plaintiff must send a notice of the violations of the CLRA by certified or registered mail with return receipt at least 30 days before filing suit for violation of the CLRA. Cal. Civ. Code § 1782 (a) ("The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested . . . ."). Plaintiff argues that the Court precluded her from introducing a receipt to show that she followed the required procedures.

Despite the fact that Plaintiff did not timely identify her counsel, Alicia Hinton, as a witness at trial, the Court allowed Plaintiff to reopen her case and allowed Hinton to testify about the mailing of the notice under the CLRA. (Dkt. No. 456 (Trial Transcript from April 18, 2023) at 545:8-12.) Hinton testified that the procedure in her office at the time she sent Plaintiff's notice was to send a letter by certified mail through the United States Post Office. (*Id*. at 546:21-547:7.) She also testified that her office followed that procedure with respect to Plaintiff's notice. (*Id*.) Hinton stated:



United States District Court
Northern District of California

> Based on the record -- and I'm looking at the second and third pages that are attached to Exhibit 18 -- this certified mail receipt was prepared by my office and -- by my paralegal at that time, and then she would have handed me that letter.
>
> I took it to the post office, as was my practice at that time, paid for the certified mail, and then returned with these receipts back to the office, where they were scanned and saved in the file.

(*Id*. at 547:9-16.) Hinton stated that the receipts for her certified mailings were pages two and three of Trial Exhibit 18. (*Id*. at 547: 22-24.) Despite the fact that Plaintiff did not timely identify these receipts as trial exhibits, Court admitted those pages into evidence as Exhibit 18A and 18B. (*Id*. at 547:25-548:8.) Hinton testified that Exhibits 18A and 18B, along with a credit card receipt for payment, were the only pieces of paper that she had that related to the sending of the CLRA notice letter. (*Id*. at 554:13-20; *see also* 556:1-4 (Q: Yeah. Are there any other documents that you have in your files that substantiate the fact that this letter was sent to [Defendant] and to Elegant Furniture? A: No, I don't believe so.").)

When asked whether she, in compliance with the statute, had a copy of the return receipt for the notice, Hinton stated: "My understanding is that this document is the receipt for sending the letter by certified mail. I don't know exactly what you're referring to by 'return receipt.'" (*Id*., at 561:2-11.) In response to a question about whether she ever sent a letter by certified mail, return receipt requested, Hinton testified that Exhibits 18A and 18B demonstrated the method she used to send the letter by certified mail, which included a return receipt. (*Id*. at 561:18-23.)

Defendant's counsel then showed Hinton a document from the United States Post Office ("USPS") entitled "Return Receipt - The Basics." (Trial Ex. 146.) The document explains that "***Return Receipt*** provides the sender with proof of delivery" and shows a sample copy of what the "Return Receipt (Green Card)" looks like. (*Id*. (emphasis in original).) When Defendant's counsel showed Hinton the USPS document with the description and image of a sample green card, Hinton turned red in the face.

Hinton then testified that her office received these green cards from the United States Post Office after she mailed the CLRA notice to both Defendant and Elegant Furniture. (Dkt. No. 456 at 565:17-566:2.) Hinton explained that those green cards were in her office file in Fresno. (*Id*. at 566:19-657:5; *see also* 570:6-9 (stating green cards were in her client file in Fresno).) Hinton

United States District Court
Northern District of California

stated that she could not recall whether she had a green card (return receipt) for Elegant Furniture but that to the best of her recollection, she did have one for Defendant. (*Id*. at 571:25-572:5.)

Plaintiff's counsel confirmed that the green card she testified was in her client files in Fresno during the trial, was not disclosed in a production of documents, and was not included in disclosures under Federal Rule of Civil Procedure 26. (*Id*. at 598:20-599:3.) Instead, this purported green card was first shown to Defendant on March 31, 2023, less than two weeks before trial began, after all of the trial exhibits had been identified, and after the Court had ruled on all of the evidentiary objections to the disputed exhibits and on the motions *in limine*. (*Id*. at 598:9-14; 599:8-18.) Defendant's counsel clarified that the email was not sent in response to any request. Instead, it was an unsolicited "here is a piece of paper." (*Id*. at 599:20-22.)

The Court ruled that the green card, which was not even in San Francisco when it was offered, could not be admitted. (*Id*. at 599:25-600:10.) Logistically, it is not clear how the green card even could have been admitted and shown to the jury, given that it was physically located in Fresno when Plaintiff offered it. Moreover, Plaintiff's request was made at the end of her presentation of evidence and just before closing arguments began. Notably, Plaintiff did not even ask to admit this document into evidence until after she had closed her case and the Court allowed her to reopen her case, over Defendant's objection, for the limited purpose of allowing Hinton to testify.

Compliance with the notice requirements of the CLRA was not newly raised at trial, and Defendant did not "open the door" to this issue at trial. Whether Plaintiff complied with the notice requirements under the CLRA was raised by Defendant in the parties' joint pretrial conference statement filed on February 24, 2023. (Dkt. No. 363 at pp. 1, 7.) Moreover, the entire reason for Hinton's testimony was to give Plaintiff an opportunity to demonstrate that she complied with the statutory requirements under the CLRA. It is not clear why Plaintiff did not think that the green card was important enough to timely produce, identify as an exhibit, or even bring into San Francisco so it *could* be introduced as evidence when Hinton was testifying on this issue.

Plaintiff could have easily sought to disclose this document properly to Defendant and to admit it into evidence earlier. Even if Plaintiff had belatedly brought the green card to the Court

when she asked to admit Exhibit 18A and 18B into evidence, the Court likely would have admitted the green card into evidence as well. But Plaintiff never brought the green card to Court during trial and has never even shown a copy of it to the Court. For all of these reasons, the Court finds that it was not error to exclude the green card.

Additionally, based on Hinton's testimony, Plaintiff's failure to timely produce a copy of the green card to Defendant, and failure to timely identify it as an exhibit and offer it as evidence, Defendant was entitled to question whether Plaintiff complied with the statutory notice requirements. Because the Court has never seen a copy of the purported green card, it cannot confirm that Plaintiff actually did send the CLRA notice by certified mail, return receipt requested, to Defendant. Therefore, the Court denies Plaintiff's motion for a new trial on this ground.

**D. Exclusion of Levitin Report.**

Plaintiff argues that the Court improperly excluded the opinions of her expert, Adam J. Levitin. Levitin teaches about retail installment sales, secondary market financing of consumer credit, and the distinction between the regulatory regimes for lenders and assignees of retail installment sales contracts ("RISC") at Georgetown University Law Center. (Dkt. No. 337-1 (Ex. B to the Declaration of Tomio B. Narita in Support of Defendant's motions *in limine*) at ¶ 5.) Levitin does not describe any experience specific to California law or the markets in California. (*Id*. at ¶¶ 5-20.) In his report, Levitin states that California law looks to substance over form when determining whether a transaction is a direct loan or an assignment of a RISC, citing *In the Matter of the Commissioner of Business Oversight v. Sezzle, Inc.*, 2019 WL 8194406 (Cal. Dept. Corp. Dec. 30, 2019); Cal. Dept. of Bus. Oversight, Opinion Letter re Deferred Payment Products, File No. OP 7667 (Dec. 20, 2019). (*Id.*, ¶ 27, n. 1.)

Levitin opines that Defendant's "financing bears the indicia of being a direct loan to consumers rather than [an] assignment of a RISC[]" because Defendant's "involvement in the financing went beyond what was necessary to effectuate a mere assignment" of Plaintiff's RISC. (*Id*. at ¶ 28; *see also* ¶ 84.) He then concludes that "[t]hese facts are indicative to me based on my experience and knowledge that [Defendant's] transactions are direct loans, not assignments of RISCs." (*Id*. at ¶ 30.)

United States District Court
Northern District of California

Under the guise of summarizing the regulatory landscape for consumer loans and RISCs in California, Levitin summarizes California statutes and case law. (*Id*. at ¶¶ 35-42, n. 7-19.) Under California law, Levitin opines that in order to be a *bona fide* RISC, the contract must be between the consumer and the retailer. (*Id*. at ¶ 38 ("If the financing is provided to the consumer by a third-party, the transaction is inherently a loan. In contrast, if a retailer sells or otherwise assigns a *bona fide* RISC, the sale of the contract does not result in the contract being subject to the California Financing Law.").) He further summarizes California law as follows:

> The involvement of a third-party financing institution in what purports to be a RISC may result in the transaction being deemed a loan if (1) the third-party's involvement goes beyond what is necessary to effectuate the purchase of the contract; (2) the role of the third-party and the terms of the transaction are not fully disclosed to the consumer; or (3) if the third party does not bear the full risk of the consumer's performance under the contract.

(*Id*. at ¶ 42.) Levitin describes how Defendant works with retailers and its "RISC Program." (*Id*., at ¶¶ 43-83.) Applying the facts to his analysis of California law, Levitin concludes that Defendant's role "bears the indicia of being a loan, rather than a *bona fide* retail installment sales contract." (*Id*. at ¶¶ 84-104.)[1]

Defendant filed a motion *in limine* to exclude Levitin's report on several grounds, including that Levitin offers opinions on ultimate issues of law (that the transaction was a loan) and that Levitin was not qualified to offer expert testimony on California law or customs and practices used in California. The Court granted the motion *in limine* and finds that it did not err.

While Levitin refrains from making the ultimate legal conclusion that the Defendant provided a loan to Plaintiff, his opinion that the Security Agreement and Defendant's role bears the indicia of a loan stems solely from his analysis of California law and his application of the facts to this law, neither of which are permissible from experts. Plaintiff argues that she proffered Levitin's report "on the nature of the markets for sales contracts and consumer loans[,] (Dkt. No. 462 at p. 16), but Levitin merely describes, in his opinion, what California statutes and case law

---

[1] Levitin also opines about the indicia of unconscionability, but Plaintiff does not move for a new trial based on this portion of Levitin's report because the Court ruled in Plaintiff's favor on the issue of unconscionability.

United States District Court
Northern District of California

provide. (Dkt. No. Dkt. No. 337-1 (Ex. B) at ¶¶ 35-42.) However, "[i]t is well settled that the judge instructs the jury in the law." *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1999). "Experts . . . do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations." *Id.* at 486-97 (internal citation and quotation marks omitted); *see also S.E.C. v. Cap. Consultants, LLC*, 397 F.3d 733, 749 (9th Cir. 2005) ("Experts may interpret and analyze factual evidence but may not testify about the law.") (citation omitted).

Then, applying the law as he describes to the facts of the case, Levitin infringes on the province of the jury. *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (expert testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case."); *see also McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1292-93 (D. Haw. 2007) ("courts have prohibited expert opinion that applies the law to the facts, as this usurps the role of the jury.") (citing *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-11 (2d Cir. 1977)); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case."). Because Levitin improperly sought to testify on his opinion of status of California law and how it applies to the facts of this case, the Court denies Plaintiff's motion on this ground.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion for a new trial in its entirety.

**IT IS SO ORDERED**.

Dated: June 27, 2023

Sallie Kim

SALLIE KIM
United States Magistrate Judge

re